# CHARLESTON.

## HANLY *v.* WATTERSON *et al.*

Submitted January 31, 1894.—Decided March 31, 1894.

1. JURISDICTION—EQUITY.

When a court of equity takes jurisdiction of a cause for one purpose, it will go on and dispose of the questions involved to avoid a multiplicity of suits.

2. OPTION.

It is the general rule that, where an option to be exercised or a condition to be performed is not limited by the agreement, then such option must be acted upon and condition performed or abandoned within a reasonable time.

3. OPTION.

A party having an option to purchase the timber growing upon a tract of land, which is not limited as to time by his agreement, may by his own acts and by acquiescence in the acts of another in cutting and removing such timber, and by assisting in the removal of the same, pointing out the timber to the men engaged in cutting it, and raising no objection to the disposal of such timber by the party asserting an adverse claim thereto, estop himself from asserting any claim under his option.

4. OPTION—EQUITY.

Equity is the proper forum in which to assert such equitable estoppel.

5. INJUNCTION.

A court of equity will enjoin a mere trespass to real property where good title in the plaintiff is alleged, and it is also alleged in the bill that the trespasser is insolvent, because in such case the party could have no adequate remedy at law.

TOMLINSON & WILEY and C. E. HOGG for appellant cited 7 W. Va. 223; 24 W. Va. 698; 26 W. Va. 603; 34 W. Va. 406; 37 Cent. Jour. 457; 50 Barb. 302; 1 Barb. 542; 1

Den. 550; 68 U. S. 53; 37 Eng. C. L. 393; 5 W. Va. 234; 2 H. & M. 25; 20 W. Va. 169; Code (1891) c. 75, s. 1; High Inj. § 46; 1 Chitt. Pl. (11th Am. Ed.) t. p. 490, 491; 2 Saund. Pl. & Ev. 162–164; 17 Mass. 365; 2 Herm. Estop. 1293; Id. 1296–1307.

GUNN & GIBBONS, J. S. SPENCER, H. R. HOWARD, J. B. MENAGER and L. C. SOMMERVILLE for appellee :

I.—*On demurrer every allegation of the bill is admitted.*—6 W. Va. 11.

II.—*As to the bill being multifarious.*—Adams' Eq. t. p. 652, 654.

III.—*Equity should have enjoined the trespass.*—20 W. Va. 178; High Inj. §§ 671, 698, 717, 721.

IV.—*Acts and acquiesence make an equitable estoppel.*—1 Johns. Ch'y 354; 6 Johns. Ch'y 168; 10 Ohio Rep. 293; 2 Am. Dec. 293; Drew. Injunct. t. p. 43, 44; 15 S. E. Rep. 143–5; 1 Founb. Eq. 151–2 n.; Pom. Eq. Jur. §§ 818, 804, n. 1; Herm. Estop. §§ 3, 735, 765, 768, 769, 772, 773, 776, 802; Bouv's Dict'y—Maxims; 5 Call 463; 3 Harring. 90; 17 Vt. 449; 8 Shep. 130; 4 Watts & L. 323.

V.—*Equity has jurisdiction in case of estoppel in pais*—Herm. Estop. § 734; 2 White & Tud. Eq. Cas. 97; 5 How. 141: 5 Call 433, 480; 5 Johns. Ch'y 184; 1 Johns. Ch'y 344; 6 Johns. Ch'y 168; Pom. Eq. Jur. § 390; Founb. Eq. 43, 44.

VI.—*The jurisdiction of equity once existing is not lost because the courts of law have subsequently acquired a like authority.* —2 Dan. Ch'y Pl. & Pr. 1625; Pom. Eq. Jur. §§ 182, 276– 280, note 2 to § 277; 14 Am. & Eng. Ency. L. 1076; 27 W. Va. 462; 3 Gratt. 14; Herm. Estop. § 1298.

VII.—*Estoppel in pais in regard to real estate is not available at law, but must be set up in equity.*—Big. Estop. 682; 16 Ala. 714 (50 Am. Dec. 200); Big. Estop. 683 and note, 684, 685; 34 Mich. 384 (22 Am. Rep. 533).

ENGLISH, JUDGE :

This was a bill in equity filed by John S. Hanly in the Circuit Court of Mason county against John A. Watter-

son and W. S. Kirk to restrain and enjoin said Watterson his agents and employes, from cutting, felling, or manufacturing any timber, ties or lumber on, or from removing any of said ties or lumber then upon a certain tract of land described in the bill, or in any manner interfering with the same, and also to enjoin the said defendant Watterson from further prosecuting an action at law which he had instituted against the complainant on the 30th day of March, 1892, in the Circuit Court of Mason county for the value of one thousand and thirty one trees, together with the alleged market value of the estimated product of said timber when manufactured into lumber, removed and sold in the market, claiming therein damages to the amount of nine thousand dollars.

On the 21st day of June, 1892, the defendant John A. Watterson, without filing an answer, moved the judge of the Circuit Court of said county in vacation to dissolve an injunction which had theretofore been awarded in said cause. The plaintiff, by his attorneys, appeared in defence of said motion; and the matters arising upon said motion having been argued by counsel and considered by the court, said motion was overruled, and the judge refused to dissolve said injunction; and from this order the defendant Watterson obtained this appeal.

As to the effect of a motion to dissolve without answer, Barton, in his Chancery Practice (volume 1, p. 466) says : "Where upon the face of the bill there is not sufficient equity to support the injunction, a motion may be made at once to dissolve it, and this, of course, without waiting for an answer, for, if the case made by the bill was not sufficient to justify the court in granting the injunction, that injunction ought not to be continued, though no answer be filed. This proceeding amounts to a demurrer to the bill, and the injunction is *ipso facto* dissolved by the dismissal of the bill on the allowance of the demurrer thereto."

Now, in considering the action of the judge upon the demurrer, the case was presented with the following material facts conceded : That one W. S. Kirk was on the 19th day of April, 1887, the owner in fee of one thousand four hundred and twenty acres of land situated in Clendennin

district, Mason county, W. Va.;—that he sold forty acres of said land to A. J. Bright, and fifty acres to Harper & McGraw, leaving a residue of one thousand three hundred and thirty acres;—that in the year 1887, the plaintiff entered into a verbal contract with said Kirk, by which he purchased and had license from him, the said Kirk, to cut and manufacture into staves all the stave timber then standing or being upon the remainder of said tract, as well as all the timber on said land suitable for railroad ties, for which the plaintiff was to pay said Kirk four dollars *per* one thousand for the staves so manufactured, and five cents *per* tie for all the ties so manufactured;—that under said contract and license, and at the instance of said Kirk he at once entered upon said tract of land and took possession of said stave and tie timber and commenced to manufacture the same into staves and ties and has ever since been in possession of said tract of land for that purpose and has continued ever since to manufacture said timber into staves and ties, when he saw proper to do so, up to the 30th day of March, 1892;—that on the 6th day of December, 1889, he purchased said one thousand three hundred and thirty acres of land from said Kirk, and obtained a deed therefor, paying him six thousand dollars for the same;—that on the 10th day of May, 1888, said John A. Watterson entered into a contract in writing with said Kirk, in which written contract, among other things, it is stipulated, "that the said W. S. Kirk bargained and sold to the said Watterson all the timber standing and down on the leaseholds of Jas. A., Flora, Thomas, and Geo. Harbour, J. H. Hindeman, Eliza Hindeman, Elsworth Shuts, Ransome Meadows, Jas. Bostick, M. Wilcox, and Long Bros., suitable for merchantable lumber, at the rate of two dollars and fifty cents *per* M.;"—that in said writing there is a further provision "that the said Watterson shall have the option of buying all the timber on the lands of said Kirk adjoining the aforesaid leaseholds, said lands lying on both sides of the Jerry's Run road, on the same terms as for the timber on the aforementioned leasehold," prescribing the manner in which said timber was to be paid for, and that the lumber was to stand security for the price

of said timber, *etc.*;—that said Watterson had notice of plaintiff's contract and license aforesaid, and all the time after the 10th of May, 1888, defendant was engaged in sawing into lumber the merchantable timber on said land which was not embraced in plaintiff's said purchase and license from said Kirk, and that each stood by until the 30th day of March 1892, and acquiesced in the rights of each other to so manufacture the timber under their respective contracts, and, prior to the 30th day of March, 1892, said Watterson pointed out certain of plaintiff's timber to plaintiff's employes, and directed them to manufacture the same into ties for the plaintiff, if they desired to do so, and, at various times between the periods aforesaid, furnished the plaintiff the use of his tramways on said land, and tracks thereon, free of charge, to aid plaintiff in the manufacture and removal of his said stave and tie timber, and the plaintiff availed himself of the use of the same, and that the plaintiff paid said Kirk for said stave and tie timber with the permission and knowledge of said Watterson;—that the defendant Watterson had, up to the 30th day of March, 1892, manufactured of said timber into lumber more than two hundred thousand feet board measure, and now owes the plaintiff eight hundred dollars therefor, as said Kirk, for value received, had assigned to plaintiff his claim against said Watterson for the timber so to be manufactured by Watterson as aforesaid, and said Watterson had notice of said assignment, and agreed to pay to plaintiff said claim as soon as one hundred thousand feet thereof had been manufactured; that all of the timber so manufactured was to stand good for the sum aforesaid, but that the defendant had sold every part thereof and shipped the same to a foreign market and received payment therefor and placed it out of his power to subject said lumber to the payment of said claim or to get any part of the proceeds applied to the payment of his said claim; that since the 30th day of March, 1892, and up to the time of filing said bill the defendant Watterson for the first time claims to be the owner of all the timber upon said tract of land, consisting of stave, tie and saw lumber, and that he was then engaged in cutting and manufacturing said timber into ties

and lumber, and disposing of the same, and putting the proceeds into his pocket, without paying plaintiff one cent for said timber, and refusing to pay any amount whatever therefor, and that, unless defendant was restrained from cutting and manufacturing said timber, he would strip the land of all the timber of any value, without paying the plaintiff any compensation whatever therefor; that said Watterson is totally insolvent, and plaintiff would suffer irreparable injury if the defendant was allowed to proceed to manufacture the remaining portion of said timber, and that the destruction of said stave and tie timber would permanently and irreparably injure the value of plaintiff's tract of land, and prevent the proper enjoyment thereof; that the only right said Watterson has to the timber aforesaid, or value thereof, is by virtue of his contract with W. S. Kirk, of May 10, 1888, and his equitable rights thereunder; that the defendant Watterson claims that the land set out and described in said last-named contract is the same land which was conveyed to complainant by W. S. Kirk by the deed of the 6th day of December, 1889, and the timber claimed is the timber that is and was at the date of said contract upon plaintiff's tract aforesaid; that the defendant Watterson, on the 30th day of March, 1892, brought an action of trespass on the case in said Circuit Court for the value of one thousand thirty one trees, together with the alleged market value of the estimated product of said timber when manufactured into lumber, removed and sold in the market, laying his damages at nine thousand dollars and was proceeding to prosecute the same, which claim, so asserted, was for the stave and tie timber above specified, and that plaintiff does not owe the defendant anything, nor is there any liability upon the plaintiff to defendant; that the timber for which the defendant Watterson is prosecuting his action of trespass on the case, and the timber which the said Watterson claims the right to cut and remove, and which he was proceeding to cut and remove, is the stave and tie timber, and other timber outside of the leasehold, mentioned in said contract of May 10, 1888, on which he had an option, by the terms of said contract.

The clause of said contract under which said Watterson seeks to assert his claim reads as follows: "And it is further agreed that the said Watterson shall have the option of buying all the timber, on all the lands of said Kirk adjoining the aforementioned leaseholds, said lands lying and being on both sides of the Jerry's Run road, on the same terms as for the timber on the aforementioned leaseholds."

Now, the question is: Does this clause in the contract constitute such an option as can be enforced in a court of equity? The writing being under seal, it would import a valuable consideration; but when we ask the question, what is an option? we find it answered in 21 L. R. A. 128 [*Litz* v. *Goosling*, (Ky.) 19 S. W. 527] where it is said, in the notes: "An option is simply a contract by which the owner of property agrees with another person that he shall have a right to buy the property at a fixed price within a certain time;" citing *Ide* v. *Leiser*, 10 Mont. 5 (24 Pac. 695).

There are, then, two elements in an option contract—First, the offer to sell, which does not become a contract until accepted; second, the completed contract to leave the offer open for the specified time. These elements are wholly independent, and can not be treated together without great liability to confusion and error. As to the acceptance of the contract, this Court has held in the case of *Weaver* v. *Burr*, 31 W. Va 736 (8 S. E. Rep. 743) that, "to convert such proposal to sell into a valid contract of sale, it is essential that the acceptance thereof be unconditional, and that notice of such acceptance be communicated to the party proposing to sell within the time limited, or that within that time some act be done by the plaintiff which he has expressly or impliedly agreed to treat as notice of such acceptance."

It is alleged in the bill, and upon the demurrer must be regarded as true, that since the 30th day of March, 1892, the said defendant Watterson for the first time claims to be the owner of all the timber upon said tract of land, which timber consists of stave, tie, and saw lumber. In the contract relied on in the case under consideration, there was no time fixed within which the offer to sell should be accepted.

We find, however, that it has been frequently held that, where no time is stated, the offer will remain open a reasonable time, unless withdrawn. See *Stone* v. *Harmon*, 31 Minn. 512 (19 N. W. Rep. 88); also, 56 Ill. 204, where, in the case of *Larmon* v. *Jordan*, it is held that, "where no time is limited, the law fixes a reasonable time, to be determined by the circumstances of the case. Then the inquiry as to a reasonable time resolves itself into an inquiry as to what time it is rational to suppose the parties contemplated and the law will decide this to be that time which, as rational men, they ought to have understood each other to have had in mind. The proposition, to be binding, must be accepted within such reasonable time. If the party making the offer revokes the same at any time before its acceptance, and deals with the property in a manner inconsistent with a willingness to continue the offer, then the presumption that the *aggregatio mentium* necessary to a contract occurred does not arise."

So, also, in the case of *Fitzpatrick* v. *Woodruff*, 96 N. Y. 565, that court held that "it is undoubtedly the general rule, as is claimed by the appellants' counsel, that, where an option to be exercised or a condition to be performed is not limited by the agreement, then such option must be acted upon and condition performed or abandoned within a reasonable time."

These authorities, as we think, propound the law correctly upon this point, and when we consider the fact that this option was given on the 10th day of March, 1888, and that the said Watterson never claimed to be the owner of all the timber upon said tract until after the 30th day of March, 1892, during which time the plaintiff Hanly had been cutting and removing the timber from said land, under the immediate observation of said Watterson, and with his acquiesence and consent, using the tramway and appliances belonging to said Watterson in removing said timber, we can but consider that he had waived and abandoned all right that he might once have been entitled to under said option if he had acted upon it and closed it in proper time.

It is claimed in the assignment of errors in this case that the bill is multifarious. Why so? The object of the bill

is to enjoin the defendant Watterson from cutting and re-
moving the timber from a tract of land to which he is al-
leged to have no title, and also to restrain said Watterson
from prosecuting a suit against the plaintiff for damage al-
leged to have been occasioned by cutting and removing the
timber from the same tract of land. The defendant in this
case can not say that he is brought as a defendant upon a
record with a large portion of which, and upon a case made
by which, he has no connection whatever, which is one of
the tests prescribed in 1 Bart. Ch. Pr. p. 256. The action
of law which is sought to be restrained, and the unlawful
cutting and removal of the timber, both naturally raise the
question as to the true ownership of the timber, and the
right to cut and remove the same, and for this reason we
can not regard the bill as multifarious; and, if it was, it is
held in the case of *Shirley* v. *Long*, 6 Rand. (Va.) 764, that,
"if a bill which is in part a bill of injunction be multifari-
ous, that objection can not be made on a motion to dissolve
an injunction. It must be made at the final hearing."

The next assignment of error is that "the matters set up
in said bill as constituting a defence to the action at law re-
ferred to therein can be completely availed of as a defence
in a court of law, and are proper matters of defence therein."

Now, as to the equity contained in the bill, it is alleged
that Hanly has good title, and that the defendant Watter-
son is insolvent, and in the case of *Cox* v. *Douglass*, 20 W.
Va. 178, it is held, as we think correctly, that "a court of
equity will enjoin a mere trespass to real property where
good title in the plaintiff is alleged, and it is also alleged
in the bill that the trespasser is insolvent, because in such
case the party could have no adequate remedy at law."
See 1 High, Inj. § 717. The same author says, in section
671, vol. 1, that "the most frequent class of cases in which
the aid of equity is invoked for restraining waste is in the
cutting and removal of timber from estates of freehold.
Pending an action at law to try disputed titles, the cutting
and removal of timber will be enjoined when such timber
constitutes the chief value of the land, and when it is shown
that defendant would be unable to respond in damages."
Again, it is a familiar principle that, when a court of equity

takes jurisdiction of a cause for one purpose, it will go on and dispose of the questions involved, to avoid a multiplicity of suits. So, it was held in the case of *Yates* v. *Stuart's Adm'r, supra,* p. — (19 S. E. Rep. 423) that "equity having ·properly taken jurisdiction for discovery will, to avoid multiplicity of suits, administer suitable redress." See that case, and the authorities there cited.

Another ground upon which a court of equity would afford relief upon the allegations in the bill, conceded to be true, is the ground of equitable estoppel. While it is true it appears in the record that Watterson had the option to purchase tie and stave timber on lands adjoining the leasehold property mentioned in the agreement, it no where appears that he ever did purchase any such timber outside of said leaseholds, and after the plaintiff purchased the timber, and the lands themselves, it appears that Watterson, with a full knowledge that Hanly was not only claiming the timber, but cutting and removing it, pointed out Hanly's timber to his employes, acquiesced in his cutting the same and afforded him facilities for removing it after it was cut.

In the case of *Stone* v. *Tyree,* 30 W. Va. 701 (5 S. E. Rep. 878.) JUDGE GREEN, in delivering the opinion of the court says: "It is recognized as law that if the owner of real estate, whether he has the legal title in him or not, permits such real estate to be sold in his presence by another, who claims to be the owner of the land, or by one who claims that he has full authority and power to dispose of the same, it is the duty of the true owner of the land to assert his claim then; and, if he stands by and permits an innocent purchaser to buy such land from such person claiming to have full power to dispose of it, he will be estopped thereafter from setting up any claim to such land, because of a want of full power and authority on the part of the person selling it to make good title thereto, as against such innocent purchaser, by his acquiescence at the time in the legality of such sale made in his presence."

In the case of *Jowers* v. *Phelps,* 33 Ark. 468, the law in regard to the facts which are to be regarded as constituting an estoppel *in pais* is well and properly stated as follows:

"Estoppels *in pais* depend upon facts which are rarely in any two causes precisely the same. The principle upon which they are applied is clear and well defined. A party who by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed afterwards to come in and assert his right to the detriment of the person so misled. That would be a fraud."

Herm. Estop. § 776, states the law on this subject as follows: "If a person having a right, and seeing another person about to commit, or in the course of committing, an act infringing upon that right, stands by in such a manner as really to induce the person committing the act, and who might otherwise have abstained from it, to believe that he assents to its being committed, he can not afterwards be heard to complain of the act. This is the proper sense of the term 'acquiescence,' and in that sense it may be defined as 'quiescence' under such circumstances as that assent may be reasonably inferred from it, and is no more than an instance of the law of estoppel by words or conduct."

That growing timber constitutes a portion of the realty is well established. See *Hutchins* v. *King*, 1 Wall. 53; *Vorebeck* v. *Roe*, 50 Barb. 302.

Now when we refer again to the allegation contained in the bill, and which must be regarded as true upon demurrer, we find it distinctly alleged that "if he (plaintiff) had been induced by the act and conduct of defendant, thereinbefore set out, to believe that the defendant claimed no part of said stave and tie timber on said tract of land, or had known or been informed that defendant claimed all the timber on said tract of land, he would not have become the purchaser of the said land at the price aforesaid, for plaintiff says that, if all of said timber had been owned by the defendant, the land would not have been worth more than one half the sum so paid therefor."

Among the maxims laid down in Herm. Estop. § 735, we find these: "No one can maintain an action for a

wrong where he has consented to the act which occasioned his loss." "He who who does not forbid what he can forbid seems to assent."

It is contended by counsel for the appellant that the matters set up in the plaintiff's bill might well have been pleaded and relied upon in the action at law which is sought to be enjoined in this case, and that they could have been made available in that forum if he was entitled to any relief or benefit from them. Upon this question we find that in the case of *Hays* v. *Livingston*, 34 Mich. 384, it was held that "while it is a recognized ground of equitable relief to compel the owner of lands to surrender them up to one who, by reliance upon such owner's fraudulent conduct, has been misled into taking action which gives him a superior equity, yet, at law, the legal title must prevail, and, under the statute of frauds, it is not permissible that an estoppel resting in parol should work a transfer of the legal title to lands." Judge Cooley in that case reviews the authorities at length and, referring to the Illinois decisions, he says they are equally clear and pointed.

In *Mills* v. *Graves*, 38 Ill. 455, 466, where the precise question was involved, Walker, C. J., says: "Had the acts which were proved constituted an estoppel, it would have been simply an equitable right, incapable of assertion in a court of law. There can be no pretense that mere oral declaration can ever transfer the legal title, and equitable titles and demands are not cognizable in a court of law. * * * * After careful examination of the adjudged cases, we are unable to find that such estoppels can be made available in a court of law."

In view, then, of the circumstances above detailed, and the authorities cited bearing upon the questions of fact, our conclusion is that the plaintiff, Hanly committed no error in selecting a court of equity as the proper forum in which to assert his claims and obtain the relief to which he alleges he is entitled, that the bill filed presents a case which is cognizable in a court of equity, and that the judge of the Circuit Court committed no error in overruling the motion to dissolve the injunction awarded. The decree complained of is therefore affirmed, with costs and damages.