# CHARLESTON.

## NORFOLK & W. R. CO. v. PERDUE.

Submitted January, 19 1895—Decided April 6, 1895.

1. ESTOPPEL IN *Pais*—INJUNCTION.
   Where a party who claims to be the owner of a tract of land has notice of the fact that a railroad company is excavating a

tunnel through a mountain located on said land, under claim of title thereto, remains silent as to his ownership of the land, with full knowledge of his rights, and assists in the construction of said tunnel from its commencement until its completion, and the railroad is constructed through the same, without asserting any claim to the land through which the tunnel passes, and then institutes an action for damages against the railroad company for taking his land, he will be estopped from recovering in said action, and may be enjoined from further prosecuting such action for damages.

2. ESTOPPEL IN *Pais*—EQUITABLE ESTOPPEL—EQUITY JURISDICTION.

Such equitable estoppel may be asserted in a court of equity.

3. ESTOPPEL IN *Pais*—EQUITBALE ESTOPPEL.

When one of two innocent persons—that is, persons each guiltless of an intentional moral wrong—must suffer a loss, it must be borne by that one of them who by his conduct, acts, or omissions has rendered the injury possible.

4. ESTOPPEL IN *Pais*—FRAUD.

A party who by his acts, declarations, or admissions, or by failure to act or speak under circumstances when he should do so, either designedly or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed afterwards to come in and assert his right to the detriment of the person so misled. That would be a fraud.

A. W. REYNOLDS and JOHNSTON & HALE for appellant, cited 23 W. Va. 675; 26 W. Va. 839; 34 W. Va. 207; 32 W. Va. 286; 11 W. Va. 386; 25 W. Va. 99; Pom. Eq. Jur. (2d Ed.) § 182; 30 W. Va. 687; 12 Ken. Law 107; 67 Me. 196; 27 Atl. Rep. 965; 102 U. S. 79; 96 U. S. 743; 59 Pa. 214; 7 Watts (Pa.) 163; 7 Serg. & R. 395; 10 Serg. & R. 144; 6 Johns. Ch. 166; 1 Johns. Ch. 344; 54 Pa. 361; 4 Giff. Rep. 519; 42 Pa. 513; 54 N. W. Rep. 889; 17 S. W. Rep. 589; 18 S. W. Rep. 901, 1,117; 91 Pa. 281; 4 Halstead Ch. Reps. 84; 2 Del. Ch. 130; 25 Pac. Rep. 378; 10 Md. 301; 11 Humphrey 433; 62 Miss. 209; 18 B. Mon. 175; 33 Mich. 121; 73 N. C. 8; 38 N. C. 13.

OKEY JOHNSON, G. J. HOLBROOK and A. C. DAVIDSON for appellee, cited 17 How. 47; 2 Black (U. S.) 430; 1 Mod. Eq. Pr. § 136; 2 Id. § 765; 1 Bart. Law Pr. 182; 3 W. Va. 195; 24 W. Va. 606; 16 W. Va. 282; 1 Bart. Ch. Pr. 253 and cases cited; High on Inj. § 61; 2 Johns. Ch. 281; High on Inj. § 64;

67 N. Y. 23; 56 N. Y. 115; 38 Ga. 644; High on Inj. § 21; 51 Am. Dec. 601; 61 Am. Dec. 751; 90 Am. Dec. 378; 91 Am. Dec. 177; 99 Am. Dec. 365; 29 W. Va. 333; 12 Wall. 47; 19 W. Va. 439.

ENGLISH, JUDGE:

On the 2d day of December, 1892, the Norfolk & Western Railway Company presented to the Circuit Court of Mercer county in open court its bill praying for an injunction to restrain the defendant, George W. Perdue, from prosecuting certain actions of law mentioned in said bill, and from instituting any future actions against the plaintiff on account of the matters set up in said bill, which injunction was awarded.

The material facts alleged and relied upon by the plaintiff in said bill are: That it was a consolidated corporation doing business in said county of Mercer pursuant to the laws of the state of West Virginia, and was the owner and operator of a certain railroad which runs through said county, part of which runs through 'a tunnel known as "Flat Top Tunnel." That on the 7th day of January, 1887, it entered into a contract in writing with the Flat Top Coal Company by which the latter agreed and bound itself to convey to plaintiff a strip of land two hundred and twenty feet in width, and extending the entire length of said tunnel, one half thereof to be 'on each side of the center line of said railroad or tunnel; the obect in acquiring said strip being to construct a tunnel through which to locate its railroad, which was well known to both parties to the contract. That at the time said contract was entered into the land in controversy belonged in fee simple to the Bluestone Coal Company, and that on the 12th day of April, 1889, the said Blue Stone Coal Company conveyed, by deed of that date, to the plaintiff, the said strip of land through which the said tunnel now runs, and that on the 25th day of February, 1890, E. W. Clark and others, trustees, who were grantees of the said Blue Stone Coal Company, again conveyed the said strip or parcel of land to the plaintiff; and in this manner the plaintiff became the owner in fee simple of said strip of land. That soon after obtaining the contract aforesaid, by

which it acquired said strip of land, it began the construc-
tion of its tunnel through the said strip of land, and pros-
ecuted the said work, at a cost of many thousand dollars,
until it was completed, early in the year 1888, and construct-
ed therein its railroad, over which it began running its
trains in the early part of the year 1888. That part of the
excavation of said tunnel was through a vein of bituminous
coal, which was taken out by plaintiff, but the cost of the
said tunnel was many thousands of dollars more than the
value of the coal taken out of same. That on the 21st day
of February, 1890, the defendant, George W. Perdue, in-
stituted in the Circuit Court of Mercer county, West Virginia,
against the plaintiff, an action of trespass on the case, in
which he set up claim to thirty four and thirty five one-hun-
dredths acres through which the said tunnel is located and
constructed, claiming ten thousand dollars damages on ac-
count of injury to the said tract of land claimed by him as
aforesaid, and for excavating and removing the coal from
the same in the construction of the said tunnel, which ac-
tion is still pending and undetermined in said court, the
papers in which cause are exhibited. That on the 25th day
of March, 1891, the defendant, George W. Perdue, insti-
tuted another action of trespass on the case against the
plaintiff, in which he claims one thousand dollars damages
on account of the construction of the tunnel through the
said thirty four and thirty five one-hundredths acres of land,
and the construction and operation of the said railroad
therein, which action is still pending and undetermined,
and the record in which action is also exhibited with plain-
tiff's bill. That said George W. Perdue is prosecuting the
said actions, and declares his intention to 'prosecute them
to a final judgment. That the plaintiff is informed and be-
lieves that the said Perdue will bring other actions, and
continue to harass the plaintiff with repeated actions, on ac-
count of his pretended claim to said thirty four and thirty
five one-hundredths acres of land, and in regard to the same
subject-matter involved in the first aforesaid action, unless
he is restrained from so doing by a court of equity. That
plaintiff is involved in a multiplicity of suits, and will con-

tinue to be harassed with a multiplicity of suits, on account of the pretended claim of the said thirty four and thirty five one-hundredths acres, which embraces part of the said tunnel, unless the title of the plaintiff to its said strip of land is quieted by a court of equity, and the said Perdue restrained from setting up further claim to it. That the claim of said Perdue to that part of said thirty four and thirty five one-hundredths acres of land which covers part of its said strip of two hundred and twenty feet through which the said tunnel is located is a cloud on the title of the plaintiff. That the said Perdue does not own the said land, or any part of the strip of land, belonging to the plaintiff as aforesaid, and that the claim of said Perdue should in equity be set aside as a cloud upon the title of the plaintiff. That the said Perdue knew when the plaintiff acquired title to the said land, and soon after the plaintiff began the work of constructing the said tunnel, and taking out the said coal, the said Perdue began work for the contractors who were carrying on the said work for plaintiff, and aided them in the construction of the said tunnel, and continued to aid in the construction of the same, for wages to be paid to him by said contractors, until the completion of the said tunnel. That notwithstanding the full and complete knowledge of the said Perdue of the claim of the plaintiff to said land, of the immense amount of money it was spending in the construction of the said tunnel and the railroad therein, he stood by and saw the work proceed till its completion and made no objection whatever to it, and gave to the plaintiff no notice whatever of his claim to the said land, and that the said George W. Perdue is estopped from setting up claim to any part of said strip of land belonging to plaintiff as aforesaid. That the conduct of said Perdue in keeping silent under the circumstances was a fraud upon the plaintiff, which will estop him from setting up claim to any part of the land of the plaintiff. That plaintiff had no notice whatever of the said Perdue's claim to the land purchased by it as aforesaid through which the said tunnel is located, or any part thereof, until after the completion of the said tunnel and railroad therein; its first notice of said claim

being but a short time before the instituion 'of said first action by said Perdue aginst plaintiff. That plaintiff has been in the complete and full possession of its said land, and every part thereof, continuously ever since the beginning of the construction of the said tunnel, is now in the possession of the same, and entered into the possession thereof peaceably, quietly, with the full knowledge of the said Perdue, and without any objection by him. That said George W. Perdue asserts his claim to said land under a deed from one Zachariah Perdue; that said deed is a cloud on plaintiff's title; that it is invalid, so far as conveying title is concerned, and that it should be set aside as a cloud on plaintiff's title.

An injunction was prayed for enjoining and restraining said George W. Perdue from prosecuting said actions at law, and from instituting future actions against the plaintiff on account of the matters set forth in said bill, and it was prayed that the said deed under which said Perdue claims title, and the entire claim of title, of the said Perdue to any part of the plaintiff's land, might be set aside as a cloud upon the plaintiff's title, and that the plaintiff be quieted in its title and possession of its said land and railroad.

An injunction was awarded restraining said Perdue from prosecuting the actions at law then pending against the plaintiff, and from instituting and prosecuting other actions against the plaintiff with respect to the land and subject-matter and things set up in the bill. The defendant, George W. Perdue, demurred to the plaintiff's bill, and on the 2d day of March, 1894, the court sustained said demurrer, and dissolved said injunction, and the plaintiff, declining to amend its bill, applied for and obtained this appeal.

The first error assigned and relied upon by the appellant is that the Circuit Court erred in sustaining the demurrer to the plaintiff's bill, upon the ground that the bill presented a strong case for the relief of a court of equity, by decreeing in favor of the plaintiff an equitable estoppel against the said Perdue, which was fully, clearly, and distinctly alleged, together with all the facts constituting the said equit-

able estoppel in said bill, by decree removing the cloud from the title of appellant cast upon it by said Perdue's claim, the facts in relation to which were fully and distinctly alleged in the bill, and by decree perpetually enjoining the prosecutions of the said actions at law, which were shown by the facts alleged in the bill to be purely vexatious, *etc.*

Now, upon demurrer, the universally recognized rule is that all allegations of the bill which are well pleaded must be taken as conceded to be true, and the defendant by his demurrer asserts that admitting the allegations of the bill to be true, the plaintiff by his bill has not shown himself to be entitled to relief in a court of equity. Applying, then, this test to the bill filed in the case under consideration, let us examine the question of equitable estoppel, which is presented in the plaintiff's bill in the following language: "Plaintiff alleges that said George W. Perdue is estopped from setting up claim to any part of the said strip of two hundred and twenty feet in width of land belonging to this plaintiff as aforesaid. The said Perdue knew when this plaintiff acquired title to the said land in the manner hereinbefore stated, and soon after this plaintiff began the work of constructing the said tunnel, and taking out the said coal, the said Perdue began to work for the contractors who were carrying on the said work for this plaintiff, and aided them in the construction of the said tunnel, and continued to aid in the construction of the same, for wages to be paid to him by said contractors, until the completion of the said tunnel. Notwithstanding the full and complete knowledge of the said Perdue of the claim of the plaintiffs to said land, of the immense amount of money they were spending in the construction of the said tunnel and the railroad therein, he stood by and saw the work proceed till its completion, and made no objection whatever of his claim to the said land." "Plaintiff had no notice whatever of the said Perdue's claim to the land purchased by it as aforesaid through which the said tunnel is located, or any part thereof, until after the completion of the said tunnel and railroad therein." Regarding these allegations as conceded to be true on demurrer, and turning to the law bearing upon the question,

we find that a similar question was presented for the consideration of this Court in the case of *Stone* v. *Tyree*, 30 W. Va. 687 (5 S. E. Rep. 878) in which case Green, Judge, delivering the opinoin of the Court, said: "It is recognized as law that if the owner of real estate, whether he has the legal title in him or not, permits such real estate to be sold in his presence by another, who claims to be the owner of the land, or by one who claims that he has full authority and power to dispose of the same, it is the duty of the true owner of the land to assert his claim then. And if he stands by and permits an innocent purchaser to buy such land from such person claiming to have full power to dispose of it, he will be estopped thereafter from setting up a claim to such land, because of a want of full power and authority on the part of the person selling it to make good title thereto, as against such innocent purchaser, by his acquiescence at the time in the legality of such sale made in his presence." He also says: "Whenever, in this or any other manner, such owner of lands misleads another, by his conduct or words, into the belief that a third person owns certain land, or possesses full power or authority to sell it, and he knows that such conduct or words would naturally have this effect, whether he intended them to defraud such purchaser or not, he will not only be estopped from claiming, against such innocent purchaser, this land, because in fact the person so selling it as his own, or having full power and authority to sell it, either did not own it or had no authority to sell it such as he claimed, but the courts of equity go further, and would under such circumstances compel him to convey such land to such innocent purchaser." Now, the facts being conceded as stated in the bill, it is easily perceived what gross injury and injustice would result to the appellant from the conduct of the appellee, if the doctrine of estoppel was not applied.

It appears from the allegations of the bill that the appellee, George W. Perdue, was cognizant of the fact that this strip of land two hundred and twenty feet wide was acquired by the appellant for the purpose of constructing a tunnel through the Flat Top Mountain and using it as a thorough-

fare for its railroad. Not only so, but that he actually aided in the construction of said tunnel, as a laborer, from a period soon after its commencement until its completion, being fully cognizant of the claims of appellant and of the immense amount of money it was expending in the construction of the same. A question somewhat similar to the one submitted by this record was before the Supreme Court of the United States in the case of *Morgan* v. *Railroad Co.*, 96 U. S. 716, in which it was held that "a party is not permitted to deny a state of things which his conduct or misrepresentations led another to believe existed and to act in accordance with that belief." In that case a bill was filed by Morgan against the Chicago & Alton Railroad Company. The suit involved the ownership of two strips of land adjoining that over which said company had the right of way, and forming part of its depot grounds in the town of Dwight, and the question was whether these strips of land had been dedicated by the owners thereof for depot purposes for the use of the railroad. Justice Swayne, in delivering the opinion of the court, says: "The appellee insists that the record discloses a case of estoppel in *pais*, and that the appellant is thereby barred from maintaining the claim which he seeks to enforce in this litigation. The principle is an important one in the administration of the law. It not unfrequently gives triumph to right and justice where nothing else could save them from defeat. It proceeds upon the ground that he who has been silent as to his alleged rights when he ought in good faith to have spoken shall not be heard to speak when he ought to be silent"— citing *Bank* v. *Lee*, 13 Pet. 107. "He is not permitted to deny a state of things which, by his culpable silence or misrepresentations, he had led another to believe existed, and who has acted accordingly upon that belief. The doctrine always pre-supposes error on one side and fault and fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage."

The bill alleges that the appellee was cognizant of the manner in which appellant claimed to have acquired title

to said strip of land, and he must be presumed to have known the land he claimed, and yet with all this knowledge he worked in silence for the company that constructed the tunnel, and set up no claim to any portion of said strip until after the tunnel was completed and the railroad constructed through the same. If he had objected when the work was commenced, the appellant might have made other arrangements, or perhaps changed the route. Would it, then, be doing equity to allow the appellee to wait in silence until the railroad was located, and the tunnel completed, and then assert his claim for damages? Surely not. 2 Herm. Estop. § 776, on this point, thus states the law: "If a person having a right, and seeing another person about to commit, or in the course of committing, an act infringing upon that right, stands by in such manner as really to induce the person committing the act, and who might otherwise have abstained from it, to believe that he assents to its being committed, he can not afterwards be heard to complain of the act. This is the proper sense of the term 'acquiescence,' and in that sense it may be defined 'quiescence,' under such circumstances as that assent may be reasonably inferred from it, and is no more than an instance of the law of estoppel by words or conduct." In the case of *Boardman* v. *Railway Co.*, 84 N. Y. 182, Miller, Judge, in the opinion of the court, says: "The principle applicable to such a case is laid down by Lord Denman in *Pickard* v. *Sears*, 6 Adol. & E. 474, as follows: 'The rule of law is clear that where one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a differnt state of things as existing at the same time;'" and Miller, Judge, adds: "Nor is it essential to an equitable estoppel that the party should design to mislead, and it is sufficient if his acts were calculated to mislead, and have misled, another acting upon it in good faith, and exercising reasonable care." So, also, in the case of *Jowers* v. *Phelps*, 33 Ark. 468, the law in regard to estoppel in *pais* is well stated by English, C. J., as follows: "Estoppels in *pais* de-

pend upon facts which are rarely in any two cases precisely the same. The principle upon which they are applied is clear and well defined. A party who by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed afterwards to come in and assert his right to the detriment of the person so misled. That would be fraud."

Counsel for the appellee contend that equity has no jurisdiction in this case, because the remedy at law was adequate and complete, the action being trespass on the case for injury done to real property. This Court, however, in the case of *Hanly* v. *Watterson,* 39 W. Va. 214 (19 S. E. Rep. 536) held that equity is the proper forum in which to assert an equitable estoppel. In that case Hanly obtained an injunction to restrain Watterson from cutting and removing timber from certain lands which he, Hanly, had purchased from one Kirk, and from further proceeding in an action at law which he, Watterson, had instituted against said Hanly for the value of one thousand and thirty trees, *etc.,* claiming damages to the amount of nine thousand dollars, which timber said Watterson claimed under an option from Kirk executed previous to said Hanly's purchase. It appeared from the allegations of the bill that Watterson stood by and saw Hanly's employes removing these trees, and pointed out certain trees to Hanly's employes, and acquiesced in the manufacture of the same into railroad ties, and furnished said Hanly the use of his tramways when removing said timber; and it was held that in such circumstances Watterson was estopped from asserting a claim to said timber, or recovering damages for the cutting and removal of the same. Herm. Estop. § 735, says: "There are many fundamentals of the law which are applicable to and explanatory of this doctrine of equitable estoppel;" and among them he names: *"Volenti non fit injuria"* ("No one can maintain an action for a wrong where he has consented to the

wrong which occasions his loss"); *"Qui non prohibet quod prohibere potest assentire videtur"* ("He who does not forbid what he can forbid seems to assent"); and *"Qui tacet, consentire videtur"* ("He who is silent appears to consent"). What more potent evidence could the Norfolk & Western Railroad Company have wished or desired of a want of claim or interest on the part of George W. Perdue in said strip of land than was furnished by his acts in assisting in the construction of the tunnel through the land he now claims, without asserting any claim or raising any objection?

Now, as to what constitutes an equitable estoppel, 2 Pom. Eq. Jur. § 802, says: "Equitable estoppel, in the modern sense, arises from the conduct of a party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel. The doctrine of equitable estoppel is pre-eminently the creature of equity." In section 803, the author says: "It is accurate, therefore, to describe equitable estoppel in general terms as 'such conduct by a party that it would be fraudulent or a fraud upon the rights of another for him afterwards to repudiate and to set up claims inconsistent with it.' This use of the term has long been familiar to courts of equity, which have always treated the word 'fraud' in a very elastic manner. The meaning here given to 'fraud' or 'fraudulent' is virtually synonymous with 'unconscientious' or 'inequitable.' " Again, in the same section, he says: "When all the varieties in equitable estoppel are compared, it will be found, I think, that the doctrine rests upon the following general principle: When one of two innocent persons—that is, persons each guiltless of an intentional moral wrong—must suffer loss, it must be borne by that one of them who by his conduct, acts,

or omissions has rendered the injury possible." And, also, in section 804, the same author says: "From the foregoing general description it will appear, I think, that the following definition is accurate, and covers all phases and applications of the doctrine: 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy.' "

The essential elements constituting the estoppel are set forth in section 805 of the same work, as follows: *First.* There must be conduct, acts, language or silence amounting to a representation or a concealment of material facts. *Second.* These facts must be known to the party estopped at the time of said conduct, or at least the circumstance must be such that knowledge of them is necessarily imputed to him. *Third.* The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time it was acted upon by him. *Fourth.* The conduct must be done with the expectation that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. There are several familiar species in which it is simply impossible to ascribe any intention or even expectation to the party estopped that his conduct will be acted upon by the one who afterwards claims the benefit of the estoppel. *Fifth.* The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. *Sixth.* He must in fact act upon it in such a manner as to change his position for the worse. In other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct, and to assert rights inconsistent with it." And, again, in section 807, the same

author says: "The general rule is that if a person interested in an estate knowingly misleads another into dealing with the estate as if he were not interested, he will be postponed to the party misled, and compelled to make his representation specifically good. It applies to one who denies his own title or incumbrance when inquired of by another who is about to purchase the land, or to loan money upon its security; to one who knowingly suffers another to deal with the land as though it were his own; to one who knowingly suffers another to expend money in improvements without giving notice of his own claim, and the like. * * * In the language of the most recent decision, to preclude the owner of land from asserting his legal title or interest under such circumstances, there must be shown either actual fraud, or fault or negligence equivalent to fraud, on his part, in concealing his title, or that he was silent when the circumstances would impel an honest man to speak," *etc.*

Applying these principles to the facts stated in the bill, and which are conceded upon demurrer, my conclusion is that the Circuit Court erred in sustaining the demurrer to the plaintiff's bill, and in dissolving the injunction awarded in said cause. The decree complained of is therefore reversed, and the cause remanded, with costs.