**In re Q.T., INC., t/a Quick Trucks Company, Debtor.**

**Bankruptcy No. 88–01061–RS.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Aug. 15, 1990.

Douglas E. Little, Charlottesville, Va., for debtor.

Mary E. Harkins, U.S. Trustee's Office, Richmond, Va., Chapter 11 trustee.

John W. Pearsall, III, Pearsall & Pearsall, Richmond, Va., for Thomas Russell & Co., Inc.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court upon the debtor's motion for approval of a disclosure statement and a motion filed by Thomas Russell, Inc., for relief from the automatic stay of 11 U.S.C. § 362. Finding that cause does not exist for the modification of the stay, the Court denies Thomas Russell's motion. Due to inaccuracies in the debtor's disclosure statement, the debtor's motion for approval of its disclosure statement is denied.

## FINDINGS OF FACT

The debtor in this case, Q.T., Inc. ("debtor"), filed its Chapter 11 petition on May 12, 1988. The debtor is a business engaged in the servicing and repair of truck trailers, and has been operating as a debtor-in-possession since the bankruptcy filing. Prior to the bankruptcy filing, the debtor leased its place of business ("property") from Thomas Russell, Inc. ("Thomas Russell") pursuant to a lease agreement between the parties ("lease"). After filing its petition, the debtor moved this Court to approve its assumption of its lease with Thomas Russell. The Court approved the assumption of the lease, specifically conditioning such approval on the debtor catching up the pre-petition arrearages, and making the rental payments by the fifteenth of each

month prior to the month in which the payments were due. The debtor has continued to operate its business on the property under the terms of the assumed lease.

Under the terms of the lease, the debtor retained an option to renew the lease at the end of the initial term, or the debtor could exercise an option to purchase the property for specific prices as set forth in the lease. The lease had an expiration date of May 31, 1990. The renewal and purchase options were conditioned upon the debtor not being in default under the terms of the lease. Of significance in this case is paragraph five of the lease, which requires the debtor to adequately maintain the property:

> 5. Lessee has inspected the premises and hereby accepts full responsibility for the condition of the premises and control thereof without reliance on any representation by or on behalf of Lessor, and ... *undertakes the affirmative duty continuously to preserve the same in such condition* and upon expiration or termination of this lease ... to redeliver the same in such condition, normal wear and tear excepted ... including refuse removal.

(Emphasis added). Additionally, paragraph two of the lease required the debtor to "comply with the requirements of all laws, ordinances, officials and regulatory bodies and agencies relating to the condition of the premises or the conduct of its operations thereat." Failure to satisfy this condition would constitute a default under the lease, and would preclude the debtor from renewing the lease or exercising its option to purchase the property.

On October 4, 1989, Thomas Russell's attorney, John W. Pearsall, III ("Pearsall"), wrote a letter ("October 4th letter") to Richard E. Bain, the debtor's president, advising him that Thomas Russell considered the debtor's maintenance of the property to be deficient and in violation of the debtor's duty to maintain the property. Pearsall followed up this letter with another letter dated October 24, 1989 ("October 24th letter"), which enclosed a loss prevention report prepared by the Thomas Russell's insurance carrier. This letter admonished the debtor to correct any safety hazards due to the debtor's occupation of the property "to the extent necessary."

Shortly following this correspondence, the debtor sent a letter to Thomas Russell on November 27, 1989, ("November 27th letter"), seeking to exercise its purchase option under the lease. There appears to be some confusion as to whether the debtor exercised its option to purchase, or rather attempted to renew its lease. The debtor's disclosure statement indicates that the debtor's intention is to renew the lease. Likewise, Thomas Russell's motion for relief from stay alleges that the debtor failed to properly renew its lease. However, a copy of the debtor's November 24th letter to Thomas Russell, admitted into evidence by the plaintiff, states the debtor's intention to *purchase* the property. Thus, the statements of the parties to the contrary notwithstanding, the evidence before the Court is that the debtor attempted to exercise its option to purchase the property, not renew the lease. The letter does state that if the bankruptcy court were to prevent the sale, that the letter should serve as a notice of renewal. Yet, since the option to purchase was contained in the lease, which the debtor assumed with Court approval, the Court has already implicitly approved the terms of the option. Subsequent to the November 27th letter, the debtor continued to lease the property and make the rent payments which Thomas Russell continued to accept. At no point did Thomas Russell indicate that the debtor's exercise of either option was invalid.

Subsequent to the debtor's attempt to exercise its option to purchase the property, the debtor has actively attempted to reorganize its business and obtain approval of a disclosure statement and confirmation of a plan of reorganization. Each of the several disclosure statements presented to the Court and to Thomas Russell contained a provision disclosing the debtor's intent to remain in the property leased from Thomas Russell following confirmation of a plan of reorganization. On April 24, 1990, the Court held a hearing on the debtor's second amended disclosure statement, which contained such a provision. Counsel for Thom-

as Russell was present and was heard on the disclosure statement, yet did not raise the issue of the debtor's attempt to exercise its option.

The debtor's attempts to reorganize to date have been unsuccessful, as the debtor has yet to propose a disclosure statement meeting the requirements of § 1125 of the bankruptcy code. The debtor's most recent disclosure statement was filed on May 10, 1990, and a hearing on approval of this statement was set for July 10. On June 8, Thomas Russell filed a motion for relief from stay seeking to reenter the property. According to the motion, the debtor failed to validly exercise its right to renew the lease because the debtor was in default when the November 27th letter was received. The default alleged consists of the lack of adequate maintenance of the property in derogation of paragraphs two and five of the lease.

A consolidated hearing was held on the disclosure statement and the motion for relief from stay. With respect to the motion for relief from stay, Thomas Russell argued that the debtor's failure to adequately maintain the property constituted a default precluding the debtor from exercising its option to renew. The evidence demonstrated that the debtor's business property was in a general state of disarray. Of important note, a waste water tank had been allowed to overflow, creating a potential hazard. Additionally, the pictures and slides taken of the area depicted garbage and dilapidated vehicles strewn across the lot. Thomas Russell's president testified that he had notified the debtor of these problems, but that they had never been cured to Thomas Russell's satisfaction. None of the evidence indicated that Thomas Russell notified the debtor that it intended to contest the debtor's exercise of its option.

Debtor's counsel contended that the debtor was not in violation of the lease. Thus, debtor's counsel argued that when the option was exercised, no default existed, consequently, the debtor's "renewal" of the lease was validly executed. At the conclusion of the evidence and argument, the Court took the motion for relief from stay under advisement.

With respect to the disclosure statement, the Court heard arguments by the parties and also took this matter under advisement pending its decision on the motion for relief from stay.

## CONCLUSIONS OF LAW

The automatic stay of § 362 serves to enjoin Thomas Russell from exercising any state law remedies it may have with regard to the debtor's performance under the lease. Thomas Russell argues that it should be granted relief to permit it to reenter the property because the debtor failed to validly renew the lease, and that this constitutes cause according to § 362(d).

The issue for the Court's decision is whether the debtor validly exercised its option to purchase the property. If this option was validly exercised, then the debtor is entitled to purchase the property from Thomas Russell pursuant to the terms stated in the lease. There is no question as to the validity of the debtor's assumption of the lease containing the purchase option, as this Court approved the assumption. On the other hand, if the debtor's attempt to purchase is invalid, the lease has expired by its own terms. The termination of a lease constitutes cause for granting relief from stay to permit a landlord to enter the leased property. *In re Darwin*, 22 B.R. 259, 265 (Bankr.E.D.N.Y.1982); *In re Acorn Investments*, 8 B.R. 506 (Bankr.S.D. Cal.1981).

Thomas Russell contends that the debtor failed to validly exercise its option to renew because it was in default under the terms of the lease respecting the maintenance of the property. The evidence of the case, especially the photographs of the property, showed that the premises were in a shabby condition. Rusting vehicles and debris littered the lot. Additionally, liquid waste of unknown content could be observed beneath the waste water tank. According to the lease, the debtor was required to maintain the property in the condition in which the property was leased. The lessor's pres-

ident testified that this had not been done. This conduct by the debtor constitutes a default under the terms of the lease.

 However, Thomas Russell is equitably estopped from asserting this default on account of its silence following the receipt of the debtor's notification of its intent to purchase the property. Where a party to a transaction induces another to act upon the reasonable belief that he has waived or will waive certain rights, remedies or objections which he is entitled to assert, he will be estopped to insist upon such rights to the prejudice of the one misled. *United States v. Wood,* 99 F.2d 80, 83 (4th Cir.1938), *citing Big Vein Pocahontas Coal Company v. Browning,* 137 Va. 34, 120 S.E. 247 (1923). Such inducement may exist where a party acquiesces in another's conduct. A person who permits another to infringe upon a right, and stands by in such a manner as to induce the person committing the act to believe that he assents to it being committed, is estopped from complaining of the infringement. *Hanly v. Watterson,* 39 W.Va. 214, 19 S.E. 536 (1894); *Norfolk & Western Ry. Co. v. Perdue,* 40 W.Va. 442, 21 S.E. 755 (1895).

In *Norfolk & Western,* a railroad company was building a tunnel through a mountain, on property which it owned. One of the railroad's laborers at the tunnel site believed himself to be the owner of the real property upon which the tunnel was being built. The laborer performed work on the tunnel for the company, knowing full well of the railroad's expenditure of money and effort in constructing the tunnel. After the tunnel was completed, the laborer filed suit against the railroad for trespass, asserting that he, not the railroad, owned the tunnel property. The West Virginia Supreme Court found that the laborer was estopped from asserting his claim of title by virtue of the doctrine of equitable estoppel. As the railroad had expended money and effort in improving the property while the laborer remained silent about his claim, the court held that it would be inequitable to permit the laborer to assert his claim after the improvements had been made.

According to the West Virginia court, equitable estoppel arises where (1) conduct, including silence, amounts to a representation or a concealment of material facts; (2) these facts are known to the party estopped at the time of his said conduct; (3) the truth concerning these facts are unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him; (4) the conduct occurs under such circumstances that it is probable that it will be acted upon; (5) the conduct is relied upon by the other party; and (6) the other party acts upon the conduct to his detriment. *Norfolk and Western,* 21 S.E. at 759. The court further opined:

> [a] party who by his ... failure to act or speak under circumstances where he should do so, with designedly or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed afterwards to come in and assert his right to the detriment of the person so misled. That would be a fraud.

*Norfolk and Western,* 21 S.E. at 758, *citing Jowers v. Phelps,* 33 Ark. 465, 468 (1878). *See also Maxey v. Doe,* 217 Va. 22, 225 S.E.2d 359, 361 (1976) ("a party is estopped to assert an inconsistent position to the prejudice of another who has been led to rely on his initial position."); *Sutton v. Wise Contracting Company,* 197 Va. 705, 90 S.E.2d 805 (1956) (Virginia application of equitable estoppel).

The case at bar presents this Court with a situation analagous to *Norfolk & Western.* Thomas Russell's silence during the six months following the debtor's written notice of acceptance of its option constituted an inducement to the debtor to rely upon the validity of its exercise of its option. Following the debtor's November 24th letter, Thomas Russell took no action to dissuade the debtor from believing that it validly exercised its option. While Thomas Russell had informed the debtor of its displeasure concerning the condition of the

property, these communications did not amount to a disaffirmance of the debtor's exercise of its option. The debtor could reasonably believe that Thomas Russell's failure to contest the debtor's November 24th letter exercising its option indicated its acquiescence. Such reliance by the debtor on Thomas Russell's silence is evident, as the debtor pursued the approval of a disclosure statement which provided for the debtor to remain on the property. Thomas Russell knew that the debtor was relying on its acquiescence, as it received copies of all of the debtor's disclosure statements, evidencing the debtor's intent to continue to operate on the property, and also attended the April 24th hearing on approval of the second amended disclosure statement. Thus, following the debtor's attempt to exercise its option to purchase the property, Thomas Russell had ample opportunity to voice its objections, yet remained silent. To permit Thomas Russell to assert the debtor's default when it stood by and allowed the debtor to expend time, effort and money in the belief that it could remain in the property would be patently inequitable.

Accordingly, Thomas Russell is equitably estopped from asserting the debtor's default, however, the debtor is obligated to attempt to purchase the property pursuant to the valid exercise of its option to purchase. Cause for relief from stay is absent, and Thomas Russell's motion should be denied.

With respect to the debtor's disclosure statement, the Court finds that it inaccurately states that the debtor has renewed its lease with Thomas Russell. As the evidence demonstrates, the debtor exercised its option to purchase the property. For this reason, the disclosure statement must be amended to reflect the debtor's intended purchase of the property. Thus, the debtor's motion for approval of the disclosure statement should be denied.

An appropriate order will issue.