## JOWERS V. PHELPS, AD.

1. POSSESSION: *Notice of title.*
   Actual possession of land is notice to all the world, of the possessor's title.

2. ESTOPPEL IN PAIS.
   A party who by his acts, declarations, or admissions, or by failing to act or speak when he should, either designedly or with willful disregard of the interest of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, is estopped to assert his right afterward, to the injury of the party so mislead.

APPEAL from *White* Circuit Court.
Hon. SAM. W. WILLIAMS, Special Judge.
*B. D. Turner* for appellant.
*Coody,* contra.

EAKIN, J. :

Appellant Jno. J. Jowers filed his bill in equity against his son, Geo. A. Jowers, for specific performance of a sale of lands ; alleging purchase, payment of the price, continued possession under the purchase, and valuable improvements. Upon this branch of the cause the proof was clear, and specific performance was properly decreed as against Geo. A. Jowers. Phelps was also made a defendant, against whom it was charged, that, whilst complainant was so in possession, without any deed of record, he had taken a mortgage upon the land from Geo. A. Jowers, in whom the legal title remained. The prayer against him was that the mortgage might be set aside, and the property relieved.

Phelps answered, denying any notice of complainant's equitable claim at the time he took the mortgage, stating that complainant was present when it was executed by Geo. A. Jowers and set up no claim that the lands appeared on the assessment rolls in the county in the name of Geo. A. Jowers who also appeared from the records of the Recorder's

office to be the legal owner. He makes his answer a cross-bill against complainant and his co-defendant Geo. A. Jowers, stating that the lands had been levied upon at the suit of one James A. Huff as the property of said Geo. A., and advertised to be sold upon the 7th day of April, 1873. That said Geo. A., applied to him for a loan of money to pay off the execution, offering a mortgage on the lands. He lent the money and took the mortgage, to secure a note given therefor in the sum of $300, which mortgage was duly recorded. He on his part prays foreclosure. The occupancy of J. J. Jowers at the time of the mortgage is admitted. Complainant J. J. Jowers answered the cross bill, reiterating the grounds of his equitable claim, relying on his possession at the time the mortgage was executed, and denying that it was made with his knowledge or consent, although he does not expressly deny that he was present.

The Chancellor, on this branch, found that J. J. Jowers "knew of the mortgage being contemplated, prior to its execution, but failed and neglected to assert his claim to the land and notify the said Phelps of his title;" and as against J. J. Jowers decreed a foreclosure in favor of Phelps for debt, interest and costs. From this portion of the decree J. J. Jowers appealed.

This court has repeatedly held that actual possession of land, with visible indications of occupancy, is notice to all the world of some right or equity claimed by the occupant, so as to put all others who deal concerning it upon inquiry; and that a mortgage taken under such circumstances from the legal owner, should be subordinated to the rights of the occupant, whatever they may actually be, and whether shown by record or not. The question now raised is whether the complainant has been estopped by his conduct from claiming the benefit

of that protection which equity extends to the *bona fide* occupant.

The evidence on this part is, substantially: that the occupancy of the land by J. J. Jowers, and his claim of ownership was matter of notoriety in the neighborhood. He had been over two years in possession, and when the mortgage was made had a tenant upon it. Geo. A., had refused to make him a deed in pursuance of the parol purchase. It seems to have been discovered that the legal title remained in Geo. A., and the execution in question was levied upon it as his property, to satisfy a judgment of about $150. Upon the day appointed for the sale, J. J. Jowers, Geo. A. Jowers and Phelps were all at Searcy, the county seat. J. J Jowers had made an arrangement with a neighbor to buy in the land and get a sheriff's deed to fortify his title, inasmuch as his son refused to convey. He heard that his son intended to mortgage the land to Phelps to raise money to pay the execution, and advised him not to do so. His son disregarded his advice, executed the mortgage, paid the debt, and thus defeated the purposes of his father, who was waiting for the sale. J. J. Jowers was advised of his son's intentions before the mortgage was made, and was informed soon aftrrwards that they had been carried out, but he was not present when the mortgage was executed, nor did he say or do anything to mislead Phelps, the mortgagee. He seems simply to have declined any active interference, and Phelps on his part seems to have relied upon the fact that J. J. Jowers had no legal title; and upon his own judgment, that the mortgage was good. There is no proof that Phelps and J. J. Jowers had any conversation on the subject from which the assent or concurrence of the latter, in the mortgage, could be reasonably inferred. In fact, the mortgagee defeated the objects which

J. J. Jowers had in view, and which were legitimate. Phelps resided about four miles from the land.

Estoppels in *pais*, depend upon facts, which are rarely in any two cases precisely the same. The principle upon which they are applied is clear and well defined. A party who by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly, or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed, afterwards, to come in and assert his right, to the detriment of the person so mislead. That would be a fraud. But it is difficult to define special acts or conduct which in all cases would amount to an estoppel. Generally it is said that if the owner of property, *with a full knowledge of the facts, stands by,* and *permits it to be sold to an innocent purchaser,* without asserting his claim, he will be estopped. Although this will not embrace all species of estoppel in *pais,* which may be as diverse as are the nature of human transactions, it is, so far as it goes, about as safe and correct a rule as can be formulated. The leading idea is that a person shall not do, or omit to do, anything regarding his rights, which if taken advantage of by him, would work a fraud upon another; but, in this as in all other cases involving fraud, the exact limits and boundaries of fraudulent conduct, are left undefined, to be applied by the Chancellor to the facts before him.

There are no cases that seem to require the equitable owner of property to be active in seeking one about to take the legal title, for the purpose of advising him against it. He must see to it, at his peril, that by some mode which courts of equity recognize as sufficient, notice of his equity be given to all the world; or that such particular notice be brought home to the

Jowers vs. Phelps, ad.

purchaser as should put him upon it until inquiries be made, upon which there would devolve upon him the further duty of full, frank and explicit explanation. Men are not required to be clamorous in asserting their rights; nor to be active in seeking others about to deal concerning them, in order to prevent anticipated mischief. To *stand by* and see a sale to *an innocent purchaser* would be, however, a breach of moral duty, unless the owner meant to abide by it.

Upon a view of all the facts in this case the court is of opinion, that the complainant J. J. Jowers might well rest upon the notice of his equity, given to all the world by his notorious possession, and that hearing of the intended mortgage he was not obliged to seek Phelps and warn him against taking it. The time and opportunity of forbidding the sale, and asserting his rights never occurred, inasmuch as the land was not offered. He did not desire the mortgage to be made, had no inducement to mislead Phelps, and seems never to have intended by any act of his to encourage Phelps to take the mortgage. He had no influence in the matter over his son George A. and as to Phelps, he acted on his own judgment, under the advice and information of others.

So much of the Chancellor's decree as confirms the title in the land in complainant J. J. Jowers as against George A. Jowers, by way of specific performance, with costs, must be affirmed. So much of it as declares the land subject to the mortgage of Phelps, and orders a foreclosure, with costs, against said J. J. Jowers, will be reversed; and a decree will be entered here dismissing the cross-bill, and quieting the title of complainant J. J. Jowers against all claim of Phelps under or by virtue of the mortgage. The costs of this court, and so much of the costs of the court below as resulted from the cross-bill, will be adjudged against the defendant Phelps.