LITTLE ROCK COOPERAGE COMPANY *v.* LANIER.

Opinion delivered July 22, 1907.

SALE OF CHATTELS—ESTOPPEL TO CLAIM FORFEITURE.—Though a contract for sale of articles to be manufactured stipulates that payments are to be made in cash as delivered, the vendor will be estopped to claim a forfeiture because payments were made by note if he accepted the note in lieu of cash without objection.

Appeal from Howard Circuit Court; *J. C. Pinnix,* Special Judge; reversed.

*W. P. Feazel* and *Scott & Head,* for appellant.

1. Plaintiff was only required to prove by a preponderance of the evidence the contract sued on and a breach thereof; and when the defendants admitted the breach, the burden shifted to them to justify it. 102 S. W. 393.

2. An instruction which, in effect, tells the jury that if the plaintiff first violated the contract it can not recover is erroneous. Not every violation of a contract absolves the other party from performance, but only such a breach as may not be compensated for in damages. 26 Ark. 309; 2 Mechem on Sales, § 1067.

3. Where the parties have agreed on an inspector, his decision is conclusive on the parties, and can only be impeached for fraud or such gross mistakes as would imply bad faith. 48 Ark. 522; 68 Ark. 185; 96 S. W. 170. The construction of a contract is for the court, leaving the findings of fact to the jury. 9 Cyc. 784-5.

4. The sixth and twelfth instructions were erroneous. There was no proof upon which to base the latter charge. As to the sixth, if the contract is indivisible, plaintiff could not be placed in default until delivery or offer to deliver; if the contract is not indivisible, the promises were independent, and failure of one of the parties to the contract to perform does not discharge the other. Clark on Contracts, § 274. See also 9 Cyc. 642, and note 58, p. 643; 59 Ark. 405; 1 Atl. 27.

5. By their conduct as shown in the evidence, appellees are estopped to claim a breach of contract. If they had intended to breach the contract, either on account of the culling or on account of time and manner of payment, it was their duty to notify appellant. 45 Ark. 37; 33 Ark. 465.

*W. C. Rodgers* and *Sain & Sain,* for appellees.

1. It is elementary that where a plaintiff asserts and relies upon a breach of contract the burden is on him to show that there has been such a breach as will entitle him to recover.

2. It is well settled that "where there is a mutual contract for successive acts to be performed, the refusal upon one side to perform will justify the other party in treating the contract as rescinded." 38 Ark. 174; 64 Ark. 228; 67 Ark. 156; 65 Ark. 320; 46 Ia. 235; 82 Ark. 252. Instructions must be considered together as a whole. 74 Ark. 431; 78 Ark. 279. And if one conceives that an instruction is erroneous, he must point out specifically his objections. 65 Ark. 54; *Id.* 255; 66 Ark. 64; *Id.* 264; 73 Ark. 264; 74 Ark. 212; 75 Ark. 325; 76 Ark. 348. One who has himself violated a contract is in no position to complain that the other did so. 79 Ark. 271; *Id.* 523.

3. It was the duty of appellant to accept all staves called for by the contract; and it could not accept the higher grades only and reject the lower grades, if the latter grades were within the requirements of the contract.

4. The sixth instruction was correct. The contract on its face is clearly indivisible, providing for duties to be performed by both parties, and a failure of performance by one party would justify the other in treating it as at an end.

5. Defendants were entitled to their money when the staves were loaded. Delivery to the common carrier in pursuance of

appellant's directions was delivery to appellant.   44 Ark. 556; 51 Ark. 133; 81 Ark. 229.

WOOD, J.   The appellant, a domestic corporation, brought this suit against appellees, a partnership, to recover damages for an alleged breach of the following contract:

"Nashville, Ark., July 6, 1905.

"This agreement entered into on this 6th day of July, 1905, between L. N. Lanier & Company, of Mineral Springs, Arkansas, party of the first part, and the Little Rock Cooperage Company, of Miller County, party of the second part, witnesseth:

"That the party of the first part agrees to manufacture and deliver at cars at Fulton, Arkansas, on the St. Louis, I. M. & S. R. R. to the party of the second part six hundred (600,000) thousand mill-run staves, dead culls out, of the following dimensions: thirty-four (34) inches long when dry to plane 3-4 inches thick, staves to be sawed out of good white oak, cow oak and over-cup timber (not over ten per cent. over-cup).   Deliveries to begin by November 1, 1905, and sooner if weather conditions permit.   All staves are to be yarded sixty days before being hauled to railroad.   The party of the second part agrees to pay the party of the first part for all staves delivered as above $21.00 (twenty-one dollars) per thousand.   Inspection to be made at point of loading by party of the second part at its expense."

It is alleged in the complaint that appellees wholly failed to deliver 365,000 staves according to contract, to appellant's damage in the sum of $2,500, for which appellant prays judgment.

The answer sets up two defenses:

1.   That appellant had rejected as "dead culls," and had refused to accept staves that came within the contract.

2.   That appellant had failed and refused to pay for the staves that were delivered according to the contract.

Appellee alleged that these breaches of the contract by appellant occurred before appellees refused to carry out their part of the contract, and justified appellees in their refusal.

1.   We find, upon the whole, no reversible error in the rulings of the court upon the issue as to whether or not appellant first breached the contract by failing to make proper inspec-

tion of the staves that were manufactured and offered by appellees, and in rejecting as "dead culls" staves that complied with the contract and that should have been received. This whole question was one of fact for the jury.

The various phases of the evidence were covered by instructions that, taken as a whole, fairly presented the issue of fact to the jury.

2. But the court at the instance of appellees gave, among others, the following instructions:

"6. The court instructs the jury that if you believe from the evidence that the plaintiff failed to pay for the staves purchased under the contract as provided under the contract, and that the defendants were delayed in receiving the money due them by reason of plaintiff's neglect or inability to pay them, that would be a breach of contract on the part of the plaintiff, and your verdict will be for the defendants, unless you find from the evidence that defendants waived the breach.

"12. The court instructs the jury that it was the duty of the plaintiff to pay for each carload of staves shipped to them at Texarkana in a reasonable time after the cars reached plaintiff at that point; and if it failed to pay for same in a reasonable time thereafter, this would be a breach of the contract, and your verdict would be for defendants, unless the breach has been waived by defendants."

If there was a breach of the contract by appellant in failing to pay for the staves according to the terms of the contract, the above instructions submit to the jury the question as to whether or not appellees had waived such breach. It was error to submit the question of a waiver of a breach of the contract in this particular, if there was a breach, to the jury. The court should have told the jury as matter of law that if there was a breach of contract by appellant in failing to pay cash for the staves when they were delivered under the contract, appellees had waived such breach, for such was the legal effect of the uncontroverted evidence.

On this issue a witness for the appellees testified as follows: "The plaintiff did not pay for the staves as they got them. We commenced shipping about October 16th, and they didn't pay us a cent until about the 18th of November, when they paid us about $1,300. After this they didn't pay us anything until

December 21st. They owed us about $3,000 at that time, and we went over there for our money, and they gave us two notes. They had previously lent us some money, but we paid it before due."

Another witness testified: "The plaintiff did not pay us according to contract. They sent us a check for $1,302 at one time. We left Nashville about December 20th or 21st, and the last car was begun the day we left for Texarkana to see Mr. Gaggs. When I returned, the car was loaded. We had been furnishing staves since October. We demanded our pay from time to time. We got the check mentioned and two notes at Texarkana when we went down there to make a settlement. These notes were for $1,500 each, and due in thirty and sixty days. We had another settlement later on, after the notes were given, at Texarkana. As well as I remember, we were paid in full at this settlement. I think this was in February. We got something over $300 in the final settlement. When this settlement was had, I did not advise them we were not going to ship any more staves. We complained to them at that time about the payments, and had complained about the culling all the time. Complained about it at this settlement. The only objection I made at that time was that the culling and pay had not been according to contract. I did not tell Mr. Gaggs at this time that we were going to discontinue because I had not got our pay. After the settlement was made I told Mr. Gaggs that when we got more staves ready for John to inspect we would let him know. I have no recollection of promising him then and there that I would ship out the balance as soon as I could. I did not state to him in the presence of Mr. Smith and Mr. Wallace that I was going to fulfill the contract."

The man Gaggs mentioned by the witnesses was the duly authorized agent of appellant to carry on the negotiations between appellant and appellees.

It was the duty of appellees, if they intended to insist on a breach of the contract by appellant in failing to pay according to contract, to have so notified appellant when the final settlement was made with appellant and appellant paid all that was then due under the contract. While the proof shows that appellees had made complaints to appellant that payments had not

been made promptly according to contract, yet it nowhere shows that appellees, on this account, were going to insist on a forfeiture. On the contrary, after these alleged breaches appellees settled with appellant, accepting time notes of appellant on which appellant paid the discount, and also paid the notes. Appellees sent appellant a carload of staves after this settlement, and soon thereafter wrote appellant a letter in which they gave as an excuse for not sending in staves that there was "no hauling going on at all; roads the worst you ever saw"—thus leading appellant to believe that they intended to carry out their part of the contract, making no complaint then that appellant had not paid in cash, or settled according to contract, and that it had thus forfeited its contract. As late as February, 1906, when appellees say the final statement was made, and they received of appellant three hundred dollars, they still did not advise appellant that they did not intend to carry out their contract because of the failure of appellant to make payments according to the contract. Appellees say that the reason for not informing appellant that they did not intend to carry out the contract because of the failure of appellant to make cash payments promptly was that appellees had not then received the check. But this was no valid excuse. For it is not shown, and is not pretended, that appellant was insolvent, or that it could not have paid the cash if appellees had demanded and insisted upon it at any time. Appellees did not do this, but on the contrary accepted the paper of appellant instead, and led appellant at the time to believe that its contract was not forfeited. When appellees made the last settlement, they told appellant that when they had more staves ready they would let appellant know, thus leaving the impression with appellant that they would continue to furnish staves under the contract. This testimony shows conclusively that the idea of a forfeiture for failure to pay promptly was not entertained at the time of such failure, but was an after conception. Appellees should have been ingenuous and candid with appellant, and should have notified it, at the time of these alleged breaches, that they intended to insist upon them as forfeitures. Not having done so then, they can not do so now. Then was the time to speak. Appellant was entitled to such notice. For it might have paid the cash and prevented any

possible forfeitures for failure so to do, or, if the forfeiture had been declared, then appellant might have arranged its affairs so as to have prevented any injury therefrom. *Harriman* v. *Meyer,* 45 Ark. 37; *Jowers* v. *Phelps,* 33 Ark. 465.

In our opinion the court erred in not telling the jury that the defense of appellees on this ground had failed. Having submitted the question to the jury, it is impossible for anyone to say that the verdict in favor of appellees was not based upon that defense.

For the error indicated in instructions six and twelve given at the instance of appellees the judgment is reversed, and the cause is remanded for new trial.