## SMITH v. ARMOUR PACKING CO.

(Circuit Court of Appeals, Eighth Circuit. November 27, 1907.)

### No. 2,542.

TROVER AND CONVERSION—TITLE—INNOCENT PURCHASER.

Plaintiff advanced money for the purchase of certain cattle for plaintiff under an agreement that T. should purchase the cattle with plaintiff's advances, pasture and care for them at T.'s expense, and when sold, after returning the money advanced by plaintiff without interest, the profits arising should be equally divided between them. Plaintiff left with T. bills of lading for billing the cattle when they were to be shipped to market, and he, with plaintiff's knowledge, shipped 50 of the cattle, and accounted to plaintiff for the proceeds. T. thereafter shipped the cattle in controversy, which defendant purchased in good faith in the open market, the proceeds of which T. failed to account for. *Held*, that T. had an interest in the cattle entitling him to their possession, and that defendant's purchase thereof did not constitute a conversion of plaintiff's interest, under the rule that, where one of two innocent parties must suffer, he must bear the loss whose act put it in the power of the third party to commit the wrong.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trover and Conversion, §§ 95–98.]

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 6 Ind. T. 479, 98 S. W. 165.

W. A. Ledbetter and S. T. Bledsoe, for plaintiff in error.

H. C. Potterf and W. F. Bowman, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The plaintiff in error brought an action in trover against the defendant in error for the conversion of 77 head of cattle. The controversy arose out of substantially the following state of facts: The plaintiff furnished the money with which John Thrasher bought the cattle, under the agreement that Thrasher was to pasture and care for them, and when sold, after returning to plaintiff the money advanced for the purchase, without interest, the profits arising from the sale were to be equally divided between them. According to the plaintiff's testimony, this arrangement was but a continuation of the terms of an antecedent agreement between them respecting the purchase and sale of mules. As that contract was in

writing it must speak for itself. The plaintiff was to furnish the money, and Thrasher was to buy the mules, "gather them up, feed, pasture, and graze them, and to be at all the expense in taking care of them." In the purchase of the mules Thrasher used checks of the Ardmore National Bank, made payable to the order of the vendor, "and in the left-hand corner of each check he should direct the check thus: To C. R. Smith, Ardmore, I. T., and attach a bill of sale from the party from whom such mule or mules are purchased for each check so given." The mules so purchased were to be the property of the plaintiff. The closing paragraph of the contract is as follows:

"When said mules are sold, the purchase price of same shall be retained by the said C. R. Smith, and all moneys received from the sale of said mules, after the purchase price has been so returned to said C. R. Smith, shall be equally divided between said C. R. Smith and John Thrasher, and the said Thrasher is not to be charged with any interest on the money advanced by said Smith in the buying of said mules."

The evidence shows that the plaintiff left with said Thrasher bills of lading for billing the cattle in question when they were to be shipped to market; but they were not billed out in the name of the plaintiff as consignor. The evidence further shows that the number of cattle bought by Thrasher under the arrangement was 128 or 130 head. The first shipment made by Thrasher was about the 21st day of June, 1902, of two car loads, containing about 50 head. While the plaintiff claims that he was from home when both shipments were made, his own testimony is that, with knowledge of the fact that Thrasher had shipped the said 50 head of cattle, he received payment of his interest therein from Thrasher out of the proceeds. The last shipment of three car loads, of the 77 cattle in question, was made about the 28th or 30th of June, 1902. It was the proceeds of this last shipment which Thrasher failed to account for. At the conclusion of the plaintiff's evidence the District Court directed a verdict for the defendant, on the ground that the evidence disclosed a partnership relation between the plaintiff and Thrasher in said cattle. This judgment was affirmed by the Court of Appeals of the Indian Territory, but not on the ground of the existence of such partnership.

In his testimony the plaintiff sought to have it believed that under the arrangement between him and Thrasher the latter had no other office to perform than to buy the cattle, pasture, graze, and care for them, with no authority to ship or sell them in the market. To this end, he claimed that one Addington was to determine when and how the cattle were to be shipped. He admitted, however, that Thrasher "was to take them [the cattle] over and ship them," but in his name. The only office, in fact, that was to be performed by Addington was that, as he was an experienced cattle man, he should assist in cutting out the cattle, and selecting those that were deemed fit for market. But he had nothing to do with the shipping and sale of the cattle. There was nothing on the face of the contract to indicate that the marketing of the cattle was to be done alone by the plaintiff; but as the cattle were left in the exclusive possession of Thrasher, and "after the purchase price had been so returned to" the plaintiff, the remainder, if any, should be divided between them, Thrasher had something

more than a possessory right to the cattle. He had a direct conditional interest in the proceeds of the sale. The plaintiff could not take from Thrasher the possession and dispose of the cattle. As Thrasher's compensation for his trouble, care and cost of keeping the cattle depended entirely on the profits arising from the sale, his right of possession could not be interfered with by the plaintiff until sale and delivery by his consent. The interest of the plaintiff would attach to the proceeds. When he left the cattle thus in the possession of Thrasher, with blank shipping bills to be used by the latter, and the cattle were thus shipped to market by Thrasher, the purchaser in the open market, in good faith, was not guilty of conversion as to the interest of the plaintiff. The case presents an apt instance for the application of the wholesome rule that, where one of two innocent parties must suffer, he must bear the loss whose act put it in the power of the third party to commit the wrong.

We agree with the conclusion reached by the Court of Appeals of the Indian Territory that, although the relationship between Smith and Thrasher may not have been that of copartners, yet in view of the fact that the plaintiff, by accepting the proceeds of the sale of the first 50 head of cattle, had recognized Thrasher's right to sell, and as the plaintiff put Thrasher "in possession of the cattle—a badge of ownership—unless some collusion with the purchaser was shown, Smith would be as much bound by Thrasher's acts as if they were in fact partners." Trapnall v. Burton, 24 Ark. 371; Jowers v. Phelps, 33 Ark. 465. As the plaintiff intrusted the entire matter of purchasing the cattle to Thrasher, why was Thrasher not authorized to sell, as a means of ascertaining the profits, in the absence, in the written instrument, of any prescription as to who should sell?

It results that the judgments of the United States Court of Appeals of the Indian Territory and of the District Court of the Territory are affirmed.