Pearce *v.* Charles J. Upton & Company, Inc.

4-7965                                      196 S. W. 2d 761

Opinion delivered October 21, 1946.

*Hale & Fogleman* and *Rieves & Smith,* for appellant.

*Everard Weisburd,* for appellee.

Robins, J. This suit was begun in the court below by Elizabeth Baker Crawford, as executrix of the estate of

E. B. Crawford, deceased, against E. B. Crawford & Company, Incorporated. The substance of her complaint was that on May 1, 1939, F. S. Hubbard and R. E. Lawson had executed their promissory note for $2,500, payable in $50 monthly installments, to E. B. Crawford & Company, but that in truth said note really belonged to E. B. Crawford personally, having been given by Hubbard and Lawson for the purchase money of E. B. Crawford's interest in National Funeral Home, of West Memphis; and that after the death of her testate, E. B. Crawford & Company, with knowledge that the note really belonged to the Crawford estate and without notice to her, accepted a settlement from one of the makers of the note on a basis of a discount of $500, and credited its account against Mr. Crawford with the proceeds of said note as thus discounted. She further alleged that said discount was improper and unnecessary for the reason that collection of the entire amount could have been made from at least one of the makers of the note; and she prayed judgment against E. B. Crawford & Company for the sum of $500 to reimburse the estate for this improper discounting of the note belonging to it.

The answer of E. B. Crawford & Company admitted that the note, while payable to it, was in reality the property of E. B. Crawford, but alleged that E. B. Crawford himself had put up the note as collateral with the Bank of West Memphis to secure the overdraft of E. B. Crawford & Company, which had been caused by his (E. B. Crawford's) withdrawal of company funds. It also admitted that E. B. Crawford & Company did accept $1,900 as payment in full of said note on which there was at the time due $2,400 and alleged that this was done without notice to Crawford's executrix, because the bank was demanding payment of the indebtedness which the note secured and was threatening to sell the note and apply the proceeds thereon, and that it was necessary to make the discount and collect it while the opportunity to do so existed.

Appellant, Nell Elkins Crawford Pearce, filed intervention on March 17, 1941, in which she alleged that she was the mother of E. B. Crawford, deceased, and that her

son managed her affairs under a power of attorney; that one of the investments made by E. B. Crawford for her was the purchase of an interest in the National Funeral Home, title to which was taken in the name of E. B. Crawford, but that same belonged to intervener. She denied that her son owed E. B. Crawford & Company $2,500 or any other sum; alleged that there was no necessity for the discount, and that E. B. Crawford & Company knew of her equitable ownership of the note; and she asked for judgment against E. B. Crawford & Company, either for the entire amount of said note or for $500, the amount of the improper discount.

E. B. Crawford & Company responded to the intervention, denying that it knew that intervener had any interest in the National Funeral Home or in said note. It also pleaded laches and estoppel as defenses against the intervention.

After the filing of the suit E. B. Crawford & Company, Inc., changed its corporate name to that of Charles J. Upton & Company, Inc.

E. B. Crawford acquired the interest in National Funeral Home in 1937. At least a part of his investment therein was represented by three checks, one for $2,000, one for $200 and one for $1,000, drawn by him on his own bank account. He sold this interest in National Funeral Home to F. S. Hubbard and R. E. Lawson on May 1, 1939, taking from them in part payment the $2,500 note involved in this controversy.

Mr. Crawford was managing officer and a stockholder of E. B. Crawford & Company. He owned two of the five shares of the company (the amount of the entire capital stock being $20,000), two shares being owned by C. J. Upton and one share by appellant, Mrs. Pearce. Owing to Crawford's personal use of funds of the corporation it became necessary for it to borrow. A loan for it from the Bank of West Memphis was negotiated and E. B. Crawford put up as collateral the note for $2,500, executed by Hubbard and Lawson, which was in form payable to E. B. Crawford & Company, though it

is conceded by all parties that it did not belong to the corporation.

E. B. Crawford died November 12, 1939. At that time there was a balance of $2,268.27 due on his overdraft with the corporation. It developed that much of the other collateral put up with the bank to secure the above mentioned loan of E. B. Crawford & Company was worthless, and the bank began to insist on collection of the $2,500 note, installments of which were in arrears. Hubbard, who seemed to be the only solvent maker, disputed liability, asserting that misrepresentations had been made to him by Crawford as to the amount Lawson (Hubbard's co-purchaser) had paid. Hubbard claimed that Crawford told him Lawson was paying him $700, which amount Hubbard also paid Crawford, in addition to the amount of the note. Hubbard insisted that after giving the note he had discovered that Lawson had not been required to pay any cash whatever. To settle the dispute and to effect collection of the note, Mr. Upton, who had succeeded to the management of E. B. Crawford & Company, agreed to let Hubbard pay the balance of the note, less a discount of $500.

After her son's death and after the settlement of the Hubbard and Lawson note, the proceeds of which were credited to E. B. Crawford's overdraft with E. B. Crawford & Company, appellant, Mrs. Nell Pearce, sold her share of stock in E. B. Crawford & Company to S. T. Lockhart.

The lower court found that the note involved herein was not the property of the estate of E. B. Crawford, deceased, and dismissed the complaint of the executrix. The court also found that E. B. Crawford & Company had no knowledge of Mrs. Nell Pearce's interest in the note, but that since it failed to notify the executrix of Crawford's estate of its intention to discount the note it was liable to Mrs. Pearce, who was found by the lower court to be the owner of the note, in the sum of $500, representing the amount which it failed to collect on the note from Hubbard and Lawson.

From a decree in accordance with these findings Mrs. Nell Pearce has appealed, and urges here that the decree of the lower court in her favor should have been for the full amount of the note, and not merely the amount of discount thereon.

Charles J. Upton & Co., Inc. (successors to E. B. Crawford & Co.), has cross-appealed, and its insistence is that it is not liable to appellant in any sum whatever.

Mrs. Elizabeth Crawford, executrix, has not appealed.

This controversy presents two questions: First, was the interest in National Funeral Home, ostensibly owned by E. B. Crawford, in fact the property of appellant so as to entitle her to the proceeds of the note executed by Hubbard and Lawson for purchase money of this interest? And, second, was the conduct of appellant such as to estop her from asserting, when she did, her claim to this note and its proceeds?

As to the first question posed it may be said that there was a dispute in the testimony. While appellant testified that the interest in the funeral home purchased by Crawford was bought with her money, and while her testimony was somewhat corroborated by other circumstances proved, the original checks drawn by Crawford to pay for at least part of the outlay made by him in this investment were introduced in evidence and they showed to have been drawn on Crawford's individual bank account—and this in the face of the fact that appellant testified that for a considerable portion of the time her funds were kept by her son in a separate "trustee" account in the bank. E. B. Crawford's widow testified that appellant in talking to E. B. Crawford about the funeral home had spoken of it as "your funeral home." She further stated that in all business dealings transacted by her deceased husband for appellant the papers were executed in Mr. Crawford's name as trustee and not in his name individually. In none of the documents affecting this investment did it appear that Crawford was a trustee or agent of anyone.

In the view we take of the case it is not necessary for us to resolve the conflict in the testimony as to this phase of the case or to determine whether, as between her and her deceased son's estate, appellant was entitled to the proceeds of this note.

There is no conflict in the testimony.as to appellant's failure, until after the death of her son, the only person, other than herself, who really knew about the matter, and until after all the transactions as to the note had occurred, to assert any interest in this note or its proceeds; nor does appellant offer any reason, other than complete confidence in her son, for her conduct in not doing so.

Appellant must have known of the sale of the interest in the undertaking establishment, which she asserts was hers. She does not contend that her son turned over to her the cash payment of $700 which he received from Hubbard; and it is unreasonable, considering that she was a stockholder and director of E. B. Crawford & Company, to assume that she did not know that this note had been hypothecated with the bank and was being used by her son to secure a debt of the corporation incurred by reason of his own overdraft. After his death, when diligence would have dictated that she require an accounting from his estate, as to this fund, she appears not to have done so, but sold her stock, representing one-fifth of the assets of the corporation, including the proceeds of this note, without asserting that the proceeds of this note belonged to her. Presumably, when she sold her stock, she received value for her twenty per cent. share of the assets of the corporation of which assets the proceeds of the note had become, through application to the overdraft of her son, a part.

"It is difficult," said Judge EAKIN, in the case of *Jowers* v. *Phelps,* 33 Ark. 465, "to define special acts or conduct which in all cases would amount to an estoppel. Generally it is said that if the owner of property, *with a full knowledge of the facts, stands by,* and *permits it to be sold to an innocent purchaser,* without asserting his claim, he will be estopped."

. This court held in the case of *Brookfield* v. *Brookfield,* 145 S. W. 245 (headnote 2): "By failing to object to a mortgage given by his brother, who held the legal title partly in trust for plaintiff, plaintiff is estopped to deny liability of his interest under the mortgage after a sale of the brother's interest."

In the case of *Brashear* v. *Crew,* 131 Ark. 593, 199 S. W. 386, the appellant had sought to restrain the sheriff from selling under an execution against appellant's husband certain land standing in the husband's name at the time of rendition of the judgment, but which the wife and husband both testified was bought for her and with her funds. In affirming the decree of the lower court denying relief to the wife this court said: "We are of the opinion that the chancellor was correct in holding that appellant was in no attitude to assert a claim to the property against the creditors of her husband, for the reason that she had permitted the title to rest in his name for an unreasonable length of time, and thus gave him the opportunity to deal with his creditors on the faith of his ownership of the property. *Bank* v. *Norwood,* 50 Ark. 42."

"If a trustee or agent converts the subject of his trust or agency into money, and pays the same in due course of business, in discharge of his own indebtedness, to one ignorant of the nature of his title, the payee acquires a perfect and indefeasible title as against the real owner, and the right of the principal to follow the money is gone." 2 Am. Jur. 307.

In the case of *Haffke* v. *Hempstead County Bank & Trust Company,* 165 Ark. 158, 263 S. W. 395, the appellant, Mrs. Haffke, had intervened in a suit brought by the bank to foreclose a mortgage given to it by her husband. She claimed an interest in the property, and had not joined in the mortgage. In affirming the finding of the chancery court against her, we said: "We think the court properly found against the intervention of Mrs. Haffke for the following reasons: She permitted the 1921 crop to be appropriated to the debt due the bank without advising the bank that she had any interest in the land

on which she could predicate a claim to an undivided interest in the crop. We think she must have known that her husband represented to the bank, as a basis for the credit extended him in 1922, that he had the right to mortgage the crops.''

''Where C., knowing the facts, remained silent for 16 months after W. acquired certain notes in which C. was interested, and until after W. had entered into contracts with a third party changing his condition and his relationship to the maker of the notes, he was estopped to complain.'' *Price* v. *Center* (headnote 4), 200 Ark. 19, 138 S. W. 2d 391.

In the case at bar, it was shown that appellant permitted her son to invest the funds sought by her herein in property, title to which was taken in his own name, permitted him to sell the property as his own, permitted him to take a note payable to the corporation for part of the purchase money of this property and permitted him to use this note as collateral for a loan to the corporation which his overdraft with it had made necessary. Upon his death, she made no demand for the note or its proceeds until after this suit was filed; and she sold her stock in the company without disclosing that she held a claim against it that would consume one-eighth of its authorized capital. Equity and good conscience required that she assert her claim to the funds in dispute before the rights of a third party thereto arose, and, not having done so, she was, under the authorities cited above, estopped to demand payment from the corporation.

It follows that so much of the decree of the lower court as awards judgment in favor of appellant against appellee, E. B. Crawford & Company (or its successor), is reversed, and the intervention of appellant is dismissed for want of equity.