McPHERSON v. HICKS.

5-2079                                                    338 S. W. 2d 201

Opinion delivered September 19, 1960.

*Macom & Moorhead* and *James Ross,* for appellant.

*D. A. Clarke,* for appellee and cross-appellant; *Smith & Smith, J. F. Wallace, Botts & Botts, J. B. Gillison, Robert B. Gibson, Bridges & Young, Lloyd B. McCain, W. H. Howard,* for appellee intervenors.

Ed. F. McFADDIN, Associate Justice. This litigation results from dealings between the appellant McPherson and the appellee Hicks involving a rice mill and also a farm. McPherson owned a rice mill in McGehee, which he had operated under the name of "McPherson Rice Milling Company." He also owned a farm in Desha County known as the "Hally Farm." Under date of May 1, 1956 McPherson, as lessor, and Hicks, as lessee, entered into a contract[1] involving the rice mill. Hicks

---

[1] Some of the provisions of the contract were:

"1. Lessor, . . . does hereby let, lease and demise unto the lessee, for the term beginning the 1st day of May, 1956 and ending the 31st day of December 1956, the following land and property in Desha County, Arkansas, to-wit:

"That property known as the McPherson Rice Milling Company of McGehee, Arkansas, consisting of all land, buildings, machinery and equipment, used for storage, drying, cleaning, milling and any other services necessary and suitable to the operation of said milling company.

"2. Lessee agrees to pay and lessor agrees to accept as rent, . . . the net income from drying, cleaning, storage, processing and milling. Net income for the purpose of this agreement is defined as the total income from said services less the expenses necessary and incidental to the production of said income and said expenses to include $500.00 per month fee to be paid lessee for management services. Major repairs, new construction and depreciation on buildings, machinery and equipment shall not be considered an operating expense for the purpose of this agreement . . .

"9. If lessee shall fail or refuse to pay the rentals aforesaid at the times and in the manner set out or to do or perform any other of the covenants on his part herein contained or shall violate in any particular any of the conditions hereof or make an assignment for creditors, or a receiver be appointed for lessee, lessor may at his option declare the lease terminated, have the right to enter upon and take possession of said property and premises, either with or without notice, and evict and expel the lessee in any or all of his property, belongings and effects therefrom without process of law and without being guilty of any man-

took possession of the rice mill and all contents, and operated the plant under the name of "Hicks Grain Elevator and Rice Milling Company"; and in the course of the operation he incurred debts to various creditors, hereinafter called "Interveners". In addition to leasing the rice mill Hicks subsequently leased the Hally Farm from McPherson for 1956 under an oral contract, which is also involved in this litigation.

After December 31, 1956 Hicks remained in possession of the rice mill, but on July 23, 1957 McPherson filed in the Desha Circuit Court an action of unlawful detainer against Hicks to recover possession of the rice mill, the claim being that Hicks had failed and refused to pay the 1956 rent, had otherwise breached the lease, and had failed to vacate after due notice. The complaint prayed for possession and judgment for rent and damages. By specific attachment all the grain in the mill was attached. McPherson took possession of the plant and all contents; and then, on August 12, 1957, McPherson filed a second amendment to the unlawful detainer action, alleging:

"That during the periods of time mentioned in said Complaint, the plaintiff advanced from time to time large sums of money to defendant to be used by said defendant in the operation of said business mentioned in said complaint. That the defendant on many occasions made payments on said loans, but at this time is indebted to this plaintiff on said account for an undetermined amount of money.

"That said account, along with the account mentioned in said Complaint for rents due, is involved and includes numerous charges and credits and will require an accounting between said parties to determine the ac-

ner of trespass either at law or in equity, and without prejudice to any remedies or rights which he may for the collection of any delinquent rents, possession, damages, or otherwise. And no delay in the exercise of the option aforesaid by the lessor shall be deemed a waiver of his right to exercise the same at a later time."

Originally the parties contracted for the lease to end December 31, 1957; but by subsequent written contract between the parties the period was shortened so as to expire at all events on December 31, 1956. We have used the earlier date for purposes of clarity.

tual amount due this plaintiff by the defendant. That said accounting should include the entire operation of said business operated as 'Hicks Grain Elevator and Rice Milling Company' for the times mentioned in said Complaint.

"This plaintiff has been unable to obtain an accurate and just accounting of said operations, or of the open account between said parties set out above, and this Court should order an accounting of said accounts."

This Amendment was accompanied by a Motion to transfer to equity on the ground that the cause, ". . . will involve a multiplicity of actions, and will also involve an accounting between the plaintiff and defendant for the operation of a large and complex business, and that said accounting will necessarily be made up of innumerable charges and credits and a Receiver will be needed to take charge of the assets of the business involved." The entire cause was transferred to equity over Hicks' objection; and he preserved his objections by Motion to retransfer to law; and this point will be discussed in Topic I, *infra,* captioned: "Hicks' Objection To Trial In Chancery."

In the Chancery Court, various creditors of Hicks Grain Elevator and Rice Milling Company intervened and prayed for judgment against McPherson and Hicks individually and against the assets of the Hicks Grain Elevator and Rice Milling Company. On trial in the Chancery Court all of these interventions were allowed as against Hicks and the assets of the rice mill, and in addition the Chancery Court awarded the Arkansas Power & Light Company a judgment against McPherson individually for a part of the power account. McPherson claims that it was error to allow the parties to intervene, that it was error to subject the assets of the Hicks Grain Elevator and Rice Milling Company to the payment of judgments, and that it was error to render personal judgment against him in favor of the Arkansas Power & Light Company. These matters will be discussed in Topic II, *infra,* captioned: "The Interventions".

In the Chancery trial there were also claims and counterclaims between McPherson and Hicks in regard to the operation of the Hally Farm, as well as the rice mill. In the final decree from which comes this appeal, there were certain allowances in favor of McPherson and certain allowances in favor of Hicks, and there is either an appeal or a cross appeal on these matters, which will be discussed in Topic III, *infra,* captioned: "The Accounting".

I. *Hicks' Objection To Trial In Chancery.* After Hicks surrendered possession of the rice mill McPherson filed a pleading asking for an accounting between himself and Hicks, and that the cause be transferred to equity. The Circuit Court transferred the *entire* case to Chancery; but the Chancery Court retransferred the unlawful detainer action to the Law Court, and retained the accounting angle of the case. The Chancery Court thereby gave Hicks his right to a jury trial in the unlawful detainer action. In *Cortiania* v. *Franco,* 212 Ark. 930, 208 S. W. 2d 436, we said that an unlawful detainer action should proceed in the Law Court independent of any other suits between the parties: "They could not, by interposing equitable claims, convert the unlawful detainer action into another form of proceeding, because other forums were open to them." That an accounting was needed between McPherson and Hicks is shown by the enormous record in this case; and the accounting could, and did, proceed in Chancery, separate from the unlawful detainer action. We cannot see how Hicks' right to jury trial in the unlawful detainer action has been prejudiced by the Chancery Court hearing the accounting suit; and we conclude that, in accordance with *Cortiania* v. *Franco, supra,* the unlawful detainer action was properly remanded to the Circuit Court, and that the allegations for the accounting gave the Chancery Court jurisdiction to proceed as it did.

II. *The Interventions.* In his operation of the Hicks Grain Elevator and Rice Milling Company, Hicks incurred indebtedness with various creditors who were allowed to intervene, prove their claims, and recover

judgments against the proceeds of the rice, oats, and other products in the plant. McPherson denied that he was a partner with Hicks in the business and denied that the interveners had any claim on any of the assets of the Hicks Grain Elevator and Rice Milling Company so as to be superior to McPherson's claim. He contends that his judgment against Hicks is prior and superior to the interventions because he had a special attachment.

We see no merit in McPherson's contention. The evidence in this case probably would have supported a Chancery finding that McPherson was liable to all the creditors as a partner of Hicks; certainly as a partner by estoppel if not *inter se*. But the Chancellor took the view that when McPherson surrendered the grain elevator and its contents to Hicks on May 1, 1956, McPherson thereby allowed Hicks to receive credit on such assets, *i.e.*, rice, oats, and other contents, and therefore McPherson could not defeat the claims of the creditors who had extended credit to Hicks on the faith of these assets in his possession. The Chancellor reached the correct conclusion. In *Pearce* v. *Chas. J. Upton Co.*, 210 Ark. 524, 196 S. W. 2d 761, a mother had entrusted her business affairs to her son who had operated as though he were the real owner. He incurred personal indebtedness, and pledged assets of his mother's business. She sought to recover these assets from a third party but such recovery was refused by this Court. We quoted from Judge Eakin's opinion in *Jowers* v. *Phelps*, 33 Ark. 465, and the full text is more emphatic than the mere quotation:

"A party who by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly, or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed, afterwards, to come in and assert his right, to the detriment of the person so mislead. That would be a fraud. But it is difficult to define special acts or conduct which in all cases would amount to an estoppel. Generally it is said that if the owner of the property, *with a full knowledge of the facts, stands by,* and *per-*

*mits it to be sold to an innocent purchaser,* without asserting his claim, he will be estopped.''

We have a number of cases applying the rule of estoppel against the owner of property who stands by and knowingly allows a third person to sell the property under claim of title and who neither asserts title nor gives the purchaser any notice. *Danley* v. *Rector,* 10 Ark. 211, 50 Am. Dec. 242; *Haffke* v. *Hempstead County Bank,* 165 Ark. 158, 263 S. W. 395. See also 19 Am. Jur. 667 *et seq.,* ''Estoppel'' § 56; and 31 C.J.S. p. 310, ''Estoppel'' § 91. Such rule is applicable in the case at bar. The evidence shows that while Hicks was operating the rice mill McPherson was at the mill from one to ten times a day, gave orders around the plant, and on one occasion ordered supplies which were charged to him and which Hicks claims to have repaid. Certainly McPherson knew that Hicks' creditors were looking to the assets of the rice mill. Under these facts, McPherson is estopped to assert his claims as superior to the claims of the creditors of the Hicks Grain Elevator and Rice Milling Company.

That portion of the account of the Arkansas Power & Light Company which was incurred while Hicks was in charge of the rice mill (before July 23, 1957), was allowed against the assets of the rice mill; and such holding was correct, in view of what we have just stated. That portion of the account of the Arkansas Power & Light Company which was incurred after McPherson took possession of the rice mill (on July 23, 1957) was allowed as a personal judgment against McPherson. The Chancery Court was correct in so doing: because after McPherson took possession of the plant and continued to allow electric service to be furnished to it, he certainly became individually liable for such account.

We affirm the decree of the Chancery Court in all the intervention matters.

III. *The Accounting.* The accounting between McPherson and Hicks involved both the rice mill and the Hally Farm; and the correctness of the Chancery decree in this accounting matter consumes the major portion of

the testimony and argument. The transcript contains 1690 typewritten pages and the printed abstracts and briefs consume more than 500 pages. The Chancellor made written findings covering 20 typewritten pages, and the decree incorporates these findings. On the direct appeal McPherson claims many errors prejudicial to him; and on the cross appeal Hicks claims many errors prejudicial to him. To list each point and the arguments pro and con, and to review the evidence would extend this opinion to enormous lengths.

It is sufficient to say that we have carefully examined all the claims and counterclaims and find only one in which error has been shown. That one relates to a judgment of $1,509.75 against McPherson. In rendering such judgment the Chancellor said: "The 125,430 pounds of rice had a market value of $4.50 per hundredweight when the defendant could have sold it and applied the proceeds to the intervenors' claims or become an asset of the business entity. The plaintiff is liable for the difference between the price the rice would have sold for and the price it did sell for, or a total of $1,509.75." Hicks did sell some rice of $4.50 per hundred-weight but it was only a small lot and he admitted that at the time of such sale he was not prepared to sell the remaining rice on hand. Furthermore, we find no evidence that the 125,430 pounds of rice had a market value at any time of $4.50 per hundred-weight. There is testimony that some of this rice was of low grade and the value of the 125,430 pounds was not shown by evidence sufficient to make McPherson liable for damages for failure to sell, or allow the rice to be sold, at any particular time. The result is, that the $1,509.75 judgment against McPherson on this rice item is reversed and set aside. In all other respects the Chancery decree is affirmed, both on direct appeal and cross appeal; and the cause is remanded to the Chancery Court for further proceedings in accordance with this opinion. The costs of this appeal are assessed one-half against the appellant and one-half against the appellee Hicks.